NEBEKER, Chief Judge:
The appellant, Don R. Parker, appeals from a March 14, 1994, decision of the Board of Veterans’ Appeals (BVA or Board), which concluded that the total amount of his VA loan guaranty indebtedness was valid, and denied a waiver of the amount of the debt that was still outstanding. For the following reasons, the Court will affirm the Board’s decision.
I.
At all times relevant to this appeal the appellant has been, and remains, an officer on active duty with the United States Air Force. Record (R.) at 6, 26-27; see 38 U.S.C. §§ 3701(b)(4), 3702(a)(2)(C)(ii). In December 1983, he and his wife purchased an existing house in Great Falls, Montana, for its appraised value of $36,500, financed by a VA guaranteed loan in the same amount through the Montana Board of Housing (lender or holder). R. at 40^1, 48, 50. In the process, they signed a loan application agreeing to indemnify VA for any claim that it was required to pay the lender in the event of a default. R. at 22-23. The 1983 appraisal had been done for a prior potential purchaser who was attempting to qualify for a loan through the Federal Housing Authority (FHA), U.S. Department of Housing and Urban Development (HUD). R. at 73. Rather than have the property appraised again, the lender’s agent requested that a HUD Conditional Commitment, certifying the estimated reasonable value of the property as $36,500, be converted to a VA Certificate of Reasonable Value. R. at 76. An addendum to the HUD Conditional Commitment stated, “The appraised valuation is arrived at to determine the maximum mortgage [HUD] will *478 insure. HUD does not warrant the value nor the condition of the property. The purchaser should satisfy himself/herself that the price and condition of the property are acceptable.” R. at 74. The addendum also notified buyers of existing houses that “this appraisál does not guarantee that the house is free of defects.” Ibid. The appellant’s VA guaranteed loan was for a term of twenty-five years at ten percent interest, resulting in a monthly mortgage payment of $331.69. R. at 33. He expended a total of $790.54 in the purchase transaction. R. at 40.
In 1986 the Air Force transferred the appellant to England, and he was subsequently transferred again, to New Hampshire. He defaulted on the loan when he failed to make the November 1, 1989, payment. In a November 15, 1989, letter to the holder’s agent •and VA he stated,
Due to the nature of my job in the United States Air Force I was compelled to move from Great Falls in the spring of 1986. We had put our property up for sale ... as early as October of 1985. From that time to this the house has been continually for sale. In the last four years we have had four different tenants who have all either damaged the house or left without paying the rent. This has used up all our savings and tax returns for the last four years in repairs and mortgage payments. This compounded with the high cost of living in England and now New Hampshire has put a financial burden on our family (of six children) that we can no longer cope with.
R. at 37. The appellant requested that the holder’s servicing agent initiate an appraisal of the property as soon as possible and send him the paperwork for a deed in lieu of foreclosure. Ibid.
A December 12, 1989, VA record stated that
the appraiser [is] unable to gain access to [the] property since there is a tenant in [the] property and he is very hostile and won’t let anyone in. Eviction proceedings are in process to get [the] tenants out and [the holder] hopes they will be out by next week so [an] appraisal can be done.
R. at 96. On December 18, 1989, the holder advised VA that the tenants had not yet vacated the property, and that the appraiser was “[u]nable to gain access for [the] appraisal until they vacate.” R. at 95. A VA foreclosure or liquidation appraisal was finally performed on December 26, 1989. The appraisal included photographs and plats of the property and a market analysis comparing the property value to sales prices for four similar properties located in the same neighborhood. R. at 50-63. The property was valued “subject to repairs” at $26,000, a twenty-nine percent loss in value from the original appraisal. R. at 50-52. The cost of the repairs was estimated at $13,025, resulting in an “as is” value for liquidation purposes of $12,975. R. at 50. The most significant estimated repair cost was $10,000 to replace the perimeter foundation walls. R. at 55. With respect to this item, the appraiser stated:
It appears that ... at some time after original construction, the basement area was dug out, and interior walls were built approximately two feet in from the original brick and stone foundation, which does not appear to have adequate footings. The wood interior walls act as retaining walls for the dirt. Interior wood frame walls are approximately 5 [feet] high, and ... do not appear to be acceptable treated wood. The wood framed walls are then clad with a combination of materials to form the interior finish for the basement walls and rooms. In the opinion of this appraiser a new perimeter foundation would be required [to be] installed, in[ ]order that the subject improvements would or could conform to Minimum Property Requirements for existing construction.
R. at 56. The appraiser stated that the difference between the original FHA/HUD appraised value of $36,500 and the “as is” value was caused by the “poor condition of the property.” R. at 50.
In an April 1990 letter to VA, the appellant disagreed with the low value of the appraisal and with the appraiser’s determination that the perimeter foundation walls needed replacing. He stated that the basement was in the same condition when the property was originally appraised at $36,500 in 1983, and he believed that, subject to other necessary *479 repairs identified by the appraiser, the property should sell for $89,000. R. at 172. An April 1990 VA “field review” of the foreclosure appraisal resulted in the conclusion that “[n]o change in value” was warranted. R. at 50. This conclusion was handwritten on the cover memorandum to the appraisal. Ibid. In an April 26, 1990, reply to the appellant’s letter, a VA loan guaranty officer stated that because a HUD conversion had been done on the property, VA did not know what information was used for the original 1983 FHA/ HUD appraisal. R. at 174. The loan officer also stated, “On April 13, 1990, our office conducted a field review of this property and the comparable transactions used in the liquidation appraisal. Based on our inspection, we find no basis for increasing the value of this property.” Ibid. VA subsequently attempted to obtain a copy of the original appraisal, but was unable to do so. R. at 314. VA rejected the appellant’s deed in lieu of foreclosure because the estimated net loss of a resale would have exceeded the loan guaranty balance. R. at 83, 85. In an attempt to sell the property or reach a compromise, the appellant obtained offers of $12,000 and $15,000 from potential buyers. VA rejected these offers because the loss would still have exceeded the amount of the guaranty and because the appellant stated that he would be unable to participate in the loss. R. at 162-63. The appellant and VA were given notice of the time and location of the foreclosure proceedings. R. at 154, 159-60, 177.
The foreclosure sale, on June 6, 1990, was a “no bid,” meaning that VA did not specify a minimum amount to be credited against the appellant’s debt because of the low net value of the property. See 38 C.F.R. § 36.4320 (1995). The holder purchased the property for a bid of $11,490. R. at 184. At the time of the foreclosure sale, the total indebtedness on the loan was $37,670.06. R. at 221. Deducting the holder’s $11,490 bid resulted in a balance of $26,180.06, which exceeded the guaranty by more than $4,000. R. at 325. VA paid the holder the maximum amount allowable on the guaranty, which was $21,-900, minus a credit of $3.34. R. at 246. Thus, the total indebtedness to VA was originally calculated as $21,896.66. R. at 248. In a November 1990 letter, the appellant requested a waiver, alleging that the foreclosure was due to circumstances beyond his control and that repayment of the debt would force him into bankruptcy. R. at 254. He submitted a financial status report showing that he supports his spouse and six minor dependents on his Air Force salary, and that their total monthly expenses of $2,396.90 exceeded his monthly net income of $2,392.32. R. at 251-52.
In April 1991, a VA regional office (RO) Committee on Waivers and Compromises (Committee) granted a partial waiver in the amount of $14,000, leaving an outstanding balance of $7,896.66. R. at 260. The appellant’s June 1991 Notice of Disagreement stated, “I intend to appeal your decision not to grant my request for waiver of the complete [amount] of my debt.” R. at 276. In a November 1991 letter he stated, “I would like to see my share of [indebtedness] reduced by $2,750 to $5,146.66. I think that’s fair. I would further ask that I be permitted to pay this amount off starting in September of 1993 in 24 payments of $214.44.” R. at 284. The Committee granted the $2,750 reduction, “[i]n light of the fact that his property was devalued so drastically in a few years.” R. at 291. This February 1992 waiver decision was issued as part of the Statement of the Case. The appellant filed his substantive appeal to the Board, requesting a waiver of the full amount of the remaining debt or, in the alternative, a $3,510 reduction (the difference between the $15,000 offer refused by VA and the $11,490 bid by the holder at the foreclosure sale). R. at 294-96. The Board remanded the matter to obtain additional documentation on the appraisal process, and for a determination regarding the validity of the total amount of the debt. The Board also noted the apparent compromise offer contained in the appellant’s substantive appeal, and stated that the RO should engage in appropriate “negotiations in that regard.” R. at 305. After further development before the RO, the Board issued the decision now before the Court, which concluded that the total amount of the debt was valid and denied a waiver of the remain *480 ing debt. A timely appeal to this Court followed.
II.
Initially, the Court notes that, while the Committee apparently accepted the appellant’s November 1991 “compromise offer” to reduce his debt to $5,146.66, a written agreement to this effect was not obtained in accordance with the regulations, and the issue of an enforceable agreement was, in any event, not raised by the Secretary as a bar to this appeal. See 38 C.F.R. §§ 1.917(b), 1.931(d), 1.970 (1995).
The appellant’s first contention is that the total amount of indebtedness was not validly established because VA failed to follow proper procedures for conducting the field review of the foreclosure appraisal. The statute and regulations governing defaults on VA guaranteed loans do not address the procedure for obtaining foreclosure appraisals of secured property. See 38 U.S.C. § 3732; 38 C.F.R. § 36.4320. The requirements at issue here are set forth in VA Manual M26-2, paragraph 2.31, entitled, “Default, Acquisition, and Liquidation.” This manual provision states, in part:
b. As an additional requirement, when there is an indicated loss in value of 20 percent or more below the original valuation:
(1) A staff field inspection must, in each instance, be made prior to the final determination of value; and
(2) The results of the staff field inspection will be completed on VA Form 26-1858.
VA Manual M26-2, para. 2.31b (1993). The Court notes that paragraph 2.31b(2) contains certain requirements that apparently do not apply where there has been a HUD conversion, as occurred in this case. Specifically, the manual also provides: “Except in those cases in which the original reasonable value was based upon a HUD conditional commitment processed in accordance with paragraph 2.23c [i.e., a HUD conversion], the report will compare in detail the appraisal report made at the time of the loan origination with the current appraisal report_” Ibid.
The Secretary contends that the Manual M26-2 provisions relating to foreclosure appraisals are guidelines which do not have the binding effect of law. In Fugere v. Derwinski, 1 Vet.App. 103, 107 (1990), fdf'd, 972 F.2d 331 (Fed.Cir.1992), the Court held that a rule was substantive, despite its placement in a VA procedural manual, where it had the force of law and narrowly limited administrative action. See also Buzinski v. Brown, 6 Vet.App. 360, 369 (1994) (citing Rank v. Nimmo, 677 F.2d 692, 698 (9th Cir.), cert. denied, 459 U.S. 907, 103 S.Ct. 210, 74 L.Ed.2d 168 (1982) for proposition that VA handbooks, circulars, and manuals have force and effect of law where they prescribe substantive, rather than interpretive, rules).
In the decision on appeal, although the Board stated that the Manual M26-2 provisions relating to foreclosure were not binding, the Board also concluded that VA had substantially complied with these provisions:
The Board must emphasize that the liquidation appraisal was performed by an independent fee appraiser, reviewed by an independent review appraiser, field reviewed by a VA staff appraiser, and that field review was subjected to supervisory review. Following this painstaking process, a foreclosure was held, wherein the property was advertised for sale and subjected to an “open bid” auction. Although the public was invited to bid, the lender remained as the successful bidder for a bid amount that was less than the “as is” appraisal amount. Finally, following the foreclosure, [the lender] sold the subject property, presumably for the highest amount possible, yet the final sales price resulted in an additional net loss. In retrospect, the integrity and objectivity of the liquidation appraisal is unquestionable; the valuation assigned to the subject property was found to be accurate.
R. at 14.
Assuming, without deciding, that the Manual M26-2 provisions are binding on VA, there is a plausible basis for the Board’s conclusion that the foreclosure appraisal was conducted in substantial compliance with these provisions. The appellant’s only specific allegation of error with respect to the *481 field review is that the results were not recorded on Form 26-1858 as required by paragraph 2.31b(2). The Secretary has conceded that this form was not used. Secretary’s Brief (Br.) at 23. Nevertheless, the appellant has not alleged that any prejudice resulted from this error. He has neither identified any deficiency in the field review nor claimed that information was omitted which would have been required had the form been completed. As the Federal Circuit has held, “A party is not ‘prejudiced’ by a technical defect simply because that party will lose its case if the defect is disregarded. Prejudice, as used in this setting, means injury to an interest that the statute, regulation, or rule in question was designed to protect.” Intercargo Ins. Co. v. United States, 83 F.3d 391, 396 (Fed.Cir.1996). In the absence of demonstrated prejudice, the Court concludes that this technical defect amounted to no more than harmless procedural error. See 38 U.S.C. § 7261(b) (requiring Court to take into account rule of prejudicial error).
The appellant’s counsel also asserts that the December 26, 1989, foreclosure appraisal may not have been properly performed because hostile tenants may have prevented the appraiser from entering and inspecting the property. Appellant’s Br. at 8, 10. In this regard the Court notes that, while there is evidence, dated as late as December 18, 1989, that the appraisal was delayed pending eviction proceedings, there is no evidence that the appraiser was unable to enter the premises when the appraisal was finally conducted. To the contrary, the appraisal report contains a signed certification that the appraiser “personally inspected the subject property, both inside and out.” R. at 54. An addendum to this report states that the property was vacant at the time of the appraisal. R. at 55. Thus, the Court concludes that this argument is unsupported and unpersuasive.
The appellant next contends that the Board’s decision to deny a waiver of the outstanding indebtedness was arbitrary and capricious. Where there has been a loss of a secured property following a default and there is no indication of fraud, misrepresentation, or bad faith on the part of the person seeking a waiver, repayment of the indebtedness shall be waived if the Secretary determines that collection would be against equity and good conscience. See 38 U.S.C. § 5302(b); 38 C.F.R. § 1.964(a) (1995). In making this determination, consideration will be given to the following elements: (1) fault of the debtor; (2) balancing of faults between the debtor and VA; (3) undue hardship; (4) whether collection would defeat the purpose of the benefit; (5) unjust enrichment; and (6) whether the debtor changed position to his detriment in reliance on the benefit. 38 C.F.R. § 1.965(a) (1995). Waiver decisions • are subject to review under the “arbitrary and capricious” standard. If the Board articulates a satisfactory explanation for its decision, including a rational connection between the facts found and the choice made, the Court must affirm. See Kaplan v. Brown, 9 Vet.App. 116, 119 (1996); Smith (Barbara) v. Derwinski, 1 Vet.App. 267, 279 (1991).
In the decision on appeal the Board determined that the appellant was at fault in the creation of the debt, and that repayment of the debt over time would not constitute an undue hardship. The Board also rejected his argument that, had VA accepted the $15,000 offer prior to the foreclosure, the loan guaranty indebtedness would have been reduced. R. at 16. This conclusion was based on VA calculations in the record, showing that the resulting loss from a $15,000 sale would still have exceeded the loan guaranty amount. R. at 162-63. The Board further stated,
[I]n November 1991, [the appellant] specified that he would like to see his share of the indebtedness reduced to $5,146.66. He stated that he thought that amount would be “fair.” Thereafter, the RO did reduce his VA loan guaranty indebtedness to that amount. We find that decision to be fundamentally consistent with the evidence in this case. Based upon that evidence, the Board believes that the appellant should be responsible for the repayment of the loan guaranty indebtedness not previously waived by the RO. The end result would not be unduly favorable or adverse to either the Government or the appellant. Enforcement of *482 the collection of this lesser amount also contemplates the efforts made on the part of the appellant to avoid foreclosure and reduce the amount of the indebtedness. We find, therefore, that under the principles of equity and good conscience, taking into consideration as a whole all of the specifically enumerated elements of 38 C.F.R. § 1.965(a), it would not be unfair to deny the appellant a further waiver of recovery of his loan guaranty indebtedness.
R. at 17-18.
The Court holds that the Board has provided an adequate statement of reasons or bases setting forth a rational basis for its decision. In view of the foregoing, we cannot conclude that the Board’s decision was “arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.” 38 U.S.C. § 7261(a)(3)(A).
III.
Accordingly, the Board’s decision is AFFIRMED. The appellant’s request for oral argument is denied because the Court does not believe that it would materially assist in the disposition of this appeal.