# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 02-1814

LONNIE A. OVERTON, APPELLANT,

V.

R. JAMES NICHOLSON,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided      September 22, 2006   )

*R. Edward Bates*, of Naperville, Illinois, was on the brief for the appellant.

*Tim S. McClain*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; *Carolyn F. Washington*, Deputy Assistant General Counsel; and *Lavinia A. Derr*, all of Washington, D.C., were on the brief for the appellee.

Before GREENE, *Chief Judge*, and MOORMAN and LANCE, *Judges*.

GREENE, *Chief Judge,* filed the opinion of the Court. LANCE, *Judge*, filed an opinion concurring in part and dissenting in part.

GREENE, *Chief Judge*: Veteran Lonnie A. Overton appeals, through counsel, a September 26, 2002, Board of Veterans' Appeals (Board) decision that (1) found that VA had provided him with notice, compliant with 38 U.S.C. § 5103(a), of what was necessary to substantiate his claims, (2) denied increased disability rating claims for his VA service-connected left-knee disability and his right-knee disability, (3) denied a compensable disability rating for tinea versicolor, and (4) denied a rating of total disability based upon individual unemployability (TDIU). He contends that the Board erred in finding that he had received adequate notice under section 5103(a). Appellant's (App.) Brief (Br.) at 1-5; App. Supplemental Memorandum of Law (Suppl. Mem. of Law) at 1-4. Therefore, he maintains that, pursuant to *Quartuccio v. Principi*, 16 Vet.App. 183 (2002), the Board's 2002 decision should be vacated and the matters remanded to the Board for further review and adjudication. *Id.* The Secretary argues that Mr. Overton was provided with

adequate notice through a May 2001 notice letter and a June 2002 Supplemental Statement of the Case (SSOC). Secretary's Suppl. Mem. of Law at 1-3. Alternatively, he asserts that any inadequacy in notice is nonprejudicial. *Id*. at 2-6.

We hold that the Board erred by relying, in part, upon a Statement of the Case (SOC), an SSOC, and a previous Board decision to conclude that adequate section 5103(a) notice had been provided to Mr. Overton. However, applying 38 U.S.C. § 7261(b)(2), taking due account of the rule of prejudicial error, and relying, in part, on the prejudicial error analysis in *Mayfield v. Nicholson*, 19 Vet.App. 103 (2005) (*Mayfield I*), *reversed on other grounds*, 444 F.3d 1328 (Fed. Cir. 2006), and the burden of pleadings analysis in *Coker v. Nicholson*, 19 Vet.App. 439 (2006), we further hold that the Board error as to Mr. Overton's right- and left-knee claims and his TDIU claim is nonprejudicial. The Board's error as to the tinea versicolor claim, however, cannot be deemed nonprejudicial, and as such, that matter will be remanded to the Board for further adjudication consistent with this opinion.

## I. FACTS

In February 1987, Mr. Overton was awarded VA service connection for a left-knee injury, a right-knee injury, and tinea versicolor. Record (R.) at 138-48. In September 1993 he sought, through the same counsel now representing him on appeal, increased ratings for his knee disabilities and maintained that, because his disabilities rendered him unemployable, he should be awarded TDIU under 38 C.F.R. § 4.16(b) (1993). R. at 260-62. In October 1994, a VA regional office (RO) denied Mr. Overton's increased rating claims, including his claim for TDIU, after finding that (1) his service-connected disabilities did not warrant increased ratings and (2) he did not meet the established criteria for a rating of TDIU under 38 C.F.R. § 4.16(a) or for referral for extraschedular consideration under 38 C.F.R. § 4.16(b). R. at 283-85. Mr. Overton disagreed with that decision. R. at 293-94. In August 1995, he filed a formal application for TDIU. R. at 304-05. In October 1995, the RO (1) denied a compensable disability rating for his tinea versicolor; (2) denied a disability rating greater than 10% for his left-knee disability; (3) denied a disability rating greater than 20% for his right-knee disability; (4) denied a rating of TDIU; and (5) awarded him non-service-connected pension on the basis that he was unable to secure and follow a substantially gainful

occupation because of a non-service-connected disability. R. at 315. Mr. Overton did not perfect an appeal. *See* R. at 337-38, 345-52.

In June 1998, VA again denied Mr. Overton's claims for increased disability ratings for his knee disabilities and a rating of TDIU. R. at 390-96. The RO did not address Mr. Overton's tinea versicolor. Mr. Overton appealed, and the Board, in December 2000, remanded the matters to the RO for further development and adjudication. R. at 431-37. That same month, VA sent to Mr. Overton a letter that explained (1) that his claims had been remanded to the RO by the Board; (2) that VA was scheduling him for a medical examination; and (3) VA's duties to assist him. R. at 440-41. In January 2001, Mr. Overton underwent VA medical examinations for joints, mental disabilities, and a skin condition, during which the examiner found "no evidence of tinea versicolor." R. at 450-51.

In May 2001, the RO sent to Mr. Overton and his counsel a letter advising them of the enactment of the Veterans Claims Assistance Act of 2000 (VCAA), Pub. L. No. 106-475, 114 Stat. 2096 (codified, in part, at 38 U.S.C. § 5103(a)), and VA's expanded duty to provide notice on how to substantiate his pending claims for increased ratings for his knee conditions and TDIU. R. at 483-87. No mention was made of the tinea versicolor claim. *See id*. After advising of general information on how to establish service connection, the letter provided in pertinent part:

> **What Must The Evidence Show To Establish An Increased Evaluation?**
>
> Symptoms and findings showing that your service[-]connected disability or disabilities have worsened and now meet the criteria for a higher evaluation. (This can be shown by medical evidence or other evidence showing your service[-]connected condition or conditions have become worse or more disabling. We will get any VA medical records or other medical treatment records you tell us about. If necessary, we may schedule a VA examination for you to get this evidence. You may also submit your own statements or statements from other people describing your physical or mental symptoms of a disability.)

R. at 484-85. There is no indication in the record that Mr. Overton or his counsel responded to that letter. *See* R. at 1-510. In June 2002, the RO issued an SSOC notifying Mr. Overton of a June 21, 2002, rating decision that again denied increased ratings for Mr. Overton's knee disabilities, an increased rating for his tinea versicolor, and a rating of TDIU. R. at 490-93. Mr. Overton, through counsel, appealed to the Board maintaining that the RO had failed to fulfill its statutory duty to assist

3

him and had failed to consider all relevant statutes and regulations in denying his claims. R. at 505. His counsel did not raise any notice issue to the Board. *See id*. In the September 2002 decision here on appeal, the Board affirmed the RO's denial of Mr. Overton's claims. R. at 1-23. Sua sponte, the Board raised the issue of notice and found:

> [C]ommunications from the VA to the veteran, including the August 1998 [S]tatement of the [C]ase, the December 2000 Board decision, RO letters dated in December 2000 and May 2001, and the June 2002 [SSOC] have kept [Mr. Overton] apprised of what he must show to prevail in his claims. The evidence appears to be complete. Consequently, there is no further duty to notify the veteran [of] what evidence he may submit.
>
> Therefore, the Board finds that VA has met the notice and duty to assist provisions contained in the new law. In light of the notice and development action provided in this case, the Board also finds that it would not be prejudicial to the veteran to issue a decision at this time.
>
> In the circumstances of this case a remand would serve no useful purpose. VA has satisfied its duties to notify and to assist the veteran. Further development and further expending of VA's resources is not warranted.

R. at 6-7 (citations omitted). This appeal followed.


## II. LAW and ANALYSIS

### A. Standard of Review

A Board determination of whether section 5103(a) statutory and regulatory notice requirements have been complied with is "a substantially factual determination." *Mayfield v. Nicholson*, 444 F.3d 1328, 1335 (Fed. Cir. 2006) (*Mayfield II*). The Board's findings of fact are reviewed under the "clearly erroneous" standard of review in 38 U.S.C. § 7261(a)(4). *Gilbert v. Derwinski*, 1 Vet.App. 49, 52 (1990). In determining whether a finding is clearly erroneous, the Court is not permitted to substitute its own judgment for that of the Board on issues of material fact. *Id*. at 53. Under this standard of review, the Court must set aside a finding of material fact when, after reviewing the record as a whole, it is "'left with the definite and firm conviction that a mistake has been committed.'" *Id.* at 52 (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). We may reach this conclusion only if there is no "plausible basis" in the record for the Board's findings. *Id.*

4

By statute, we review "final decisions of the Board." 38 U.S.C. § 7266(a). "Decisions of the Board shall be based on the *entire record in the proceeding* and upon consideration of *all evidence and material of record* and applicable provisions of law and regulation." 38 U.S.C. § 7104(a) (emphasis added). The Board is required to include in its decision a written statement of the reasons or bases for its findings and conclusions on all material issues of fact and law presented in the record; that statement must be adequate to enable an appellant to understand the precise basis for the Board's decision, as well as to facilitate informed judicial review. *See* 38 U.S.C. § 7104(d)(1); *Allday v. Brown*, 7 Vet.App. 517, 527 (1995); *Gilbert*, 1 Vet.App. at 56-57.

### B. Section 5103(a) Notice

Section 5103(a) of title 38, U.S. Code, requires the Secretary to inform a claimant of any information and evidence not of record (1) that is necessary to substantiate the claim, (2) that the Secretary will seek to obtain, if any, and (3) that the claimant is expected to provide, if any. *See Quartuccio*, 16 Vet.App. at 187. Further, VA will "request that the claimant provide any evidence in the claimant's possession that pertains to the claim." 38 C.F.R. § 3.159(b)(1) (2006); *see Pelegrini v. Principi*, 18 Vet.App. 112, 121 (2004). "The purpose of [section 5103(a)] and [§ 3.159(b)] is to require that the VA provide affirmative notification to the claimant prior to the initial decision in the case as to the evidence that is needed and who shall be responsible for providing it." *Mayfield II*, 444 F.3d at 1333. The notice required under statutory section 5103(a) and regulatory § 3.159(b) must be provided upon receipt of a complete or substantially complete application for benefits and before an initial unfavorable decision on a claim by an agency of original jurisdiction. *Id.*; *see Pelegrini*, 18 Vet.App. at 120. Failure to comply with any of these requirements may constitute remandable error. *Quartuccio*, 16 Vet.App. at 187. Board error is assessed under the rule of prejudicial error. 38 U.S.C. § 7261(b)(2). If a notice error has been committed, we must "take due account of the rule of prejudicial error." *Id.*; *see Conway v. Principi*, 353 F.3d 1369, 1374-75 (Fed. Cir. 2004).

In *Mayfield I*, this Court held that a VCAA notice letter that was in the record on appeal, but not discussed in the Board decision, adequately provided section 5103(a) notice. *Mayfield I, supra*. In *Mayfield II*, however, the United States Court of Appeals for the Federal Circuit (Federal Circuit) held that this Court could not make such a factual determination in the first instance. *Mayfield II*,

5

*supra*. Further, the Federal Circuit observed that the duty of affirmative section 5103(a) notice is not satisfied by relying on various pre- and postdecisional communications issued for unrelated purposes from which

> a claimant might have been able to infer what evidence the VA found lacking in the claimant's presentation. . . . Congress envisioned a deliberate act of notification directed to meeting the requirements of section 5103, not an assemblage of bits of information drawn from multiple communications issued for unrelated purposes.

*Mayfield II*, 444 F.3d at 1333.

> Here, the 2002 Board found:

> [C]ommunications from the VA to the veteran, including the August 1998 [SOC], the December 2000 Board decision, RO letters dated in December 2000 and May 2001, and the June 2002 [SSOC] have kept [Mr. Overton] apprised of what he must show to prevail in his claims. The evidence appears to be complete. Consequently, there is no further duty to notify the veteran what evidence he may submit.

R. at 6. Thus, applying *Mayfield II*, we hold that the Board erroneously relied on various documents in the record, including documents that were unrelated to section 5103(a) notice, to conclude that Mr. Overton had been provided adequate section 5103(a) and § 3.159(b) notice prior to the RO's June 2002 decision. *Mayfield II*, 444 F.3d at 1335 (VCAA statute and regulation do not permit compliance through combination of unrelated pre- and postdecisional communications).

*Mayfield II* precludes us from making a notice-compliance determination without a prior factual determination by the Board. *Id*. at 1333, 1335 ("The Board's decision was based on an incorrect understanding of the law, specifically that the VCAA statute and regulation permitted compliance through a combination of unrelated pre- and postdecisional communications, and the result under the correct understanding of the law is not a foreordained conclusion."). Because the Board's decision is based on an incorrect understanding of the law, and because the Board failed to make any individualized factual findings with regard to each of the documents the Board cited as informing Mr. Overton of the information and evidence necessary to substantiate his claims, we are unable to determine whether Mr. Overton was indeed provided with the necessary notice by any preadjudicatory notice documents. *Cf. Prickett v. Nicholson*, __ Vet.App. __, __, No. 04-140, slip op. at 6 (Sept. 11, 2006) (Board's "notification discussion as a whole . . . rendered a factual

determination that [a May 2001 VCAA] notification letter alone satisfied VA's section 5103(a) duty-to-notify requirements.").

The Court notes, however, that unlike the Board in *Mayfield II*, here, the Board specifically included the May 2001 VCAA notice letter among the documents it cited as providing sufficient notice.  R. at 6.  Thus, this case is more analogous to *Conway*, *supra*, and the Court may consider the May 2001 letter in assessing prejudicial error without violating the *Chenery* principle that a court reviewing an agency decision generally may not sustain the agency's ruling on a ground different than that invoked by the agency.  *See Mayfield II*, 444 F.3d at 1337 (Federal Circuit stating that if the Board had considered the notice letter, "then this case would have been analogous to *Conway* and the . . . Court would have been in a position to decide whether the insufficiency in the notice was prejudicial"); *see also Sec. & Exch. Comm'n v. Chenery Corp.*, 318 U.S. 80, 87 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.").  Thus, on the facts presented by this case, we do not answer the question of whether the Court could find no notice error based on a single letter where the Board has previously found compliant notice by referring to a VCAA notice letter in combination with other documents not specifically designed to provide section 5103(a) notice.

Mr. Overton has specifically pled that VA never informed him of what information and evidence was needed to substantiate his claims.  Therefore, in order to determine whether the Board's error was prejudicial, we will assume the notice error, as pled by Mr. Overton.  38 U.S.C. § 7261(b)(2); *see Mayfield II* and *Conway,* both *supra*.  If no prejudice would have resulted from the notice error, then a remand based upon a reasons-or-bases error would not benefit Mr. Overton and, therefore, would be pointless.  *See Soyini v. Derwinski*, 1 Vet.App. 540, 546 (1991) (concluding that where evidence is overwhelmingly against claim, remand for reasons-or-bases deficiency would be superfluous); *see also Eddy v. Brown*, 9 Vet.App. 52, 58-59 (1996) (concluding that Board's reasons-or-bases error was nonprejudicial).

### C. Prejudicial Error Analysis

In *Mayfield I*, we provided an analysis of how we would take due account of the rule of prejudicial error when reviewing notice error.  *See Mayfield I*, 19 Vet.App. at 111-21.  In its reversal of *Mayfield I*, the Federal Circuit did not address that prejudicial error analysis.  *See Mayfield II,*

*supra*. We find the *Mayfield I* prejudicial error analysis most persuasive and adopt its reasoning herein.

A procedural or substantive error is prejudicial when the error affects a substantial right that a statutory or regulatory provision was designed to protect. *See McDonough Power Equip. v. Greenwood*, 464 U.S. 548, 553 (1984). Such an error affects the essential fairness of the adjudication. *Id*.; *see Parker v. Brown*, 9 Vet.App. 476 (1996); *see also Intercargo Ins. Co. v. United States*, 83 F.3d 391 (Fed. Cir. 1996). Accordingly, if the error does not affect the "essential fairness" of the adjudication then it is not prejudicial. *McDonough, supra*. Therefore, to persuade the Court that no prejudice resulted from a notice error, it must be demonstrated that, despite the error, the adjudication was nevertheless essentially fair. *Id*.

The VCAA expanded the Secretary's duties to notify claimants. *Quartuccio*, 16 Vet.App. at 186-87. Nothing in the VCAA, title 38 of the U.S. Code, the VCAA's legislative history, or VA's August 2001 regulations implementing section 5103, including their regulatory history, suggests that the VCAA and its implementing regulations were not intended to give a claimant a substantial right by way of amended section 5103(a) notice. Indisputably, section 5103(a) was enacted to ensure that VA advise claimants, early in the claims process, of what information is necessary to substantiate their claims and who would be responsible for obtaining that information. *Pelegrini*, 18 Vet.App. at 120-22; *see also Mayfield II*, 444 F.3d at 1333. Thus, section 5103(a) assumes a fundamental role in furthering an interest that is the very essence of the nonadversarial, pro-claimant nature of the VA adjudication system; that is, affording a claimant a meaningful opportunity to participate effectively in the processing of his or her claim. *See* 38 U.S.C. § 5103(a); *Holliday v. Principi*, 14 Vet.App. 280, 289-90 (2001). Any error that renders a claimant without that meaningful opportunity must be considered prejudicial because such error would indeed have affected the essential fairness of the adjudication.

### 1. Burdens

The appellant carries the burden of persuasion regarding contentions of error. *See Berger v. Brown*, 10 Vet.App. 166, 169 (1997) (stating that "the appellant . . . always bears the burden of persuasion on appeals to this Court"); *see also Hilkert v. West*, 12 Vet.App. 145, 151 (1999) (en banc) (holding that appellant had failed to satisfy burden of demonstrating error in Board decision,

8

and thus affirming). Also, the appellant, generally, bears the burden of showing how any error is prejudicial or has affected the essential fairness of the adjudication. *Yabut v. Brown*, 6 Vet.App. 79 (1993). In *Mayfield I*, we observed that when alleging notice error an appellant generally must identify, with considerable specificity, (1) how the notice was defective, especially in light of a Board determination that adequate notice was provided, and (2) what evidence the appellant would have provided or requested the Secretary to obtain had the Secretary fulfilled his notice obligations. *Mayfield I*, 19 Vet.App. at 121; *see Coker*, 19 Vet.App. at 442. The appellant must also assert with considerable specificity how the lack of that notice and evidence affected the essential fairness of the adjudication. *See Marciniak v. Brown*, 10 Vet.App. 198 (1997) (indicating appellant must allege and demonstrate prejudice or Court will conclude a procedural error is harmless); *see also Parker*, *supra* (same).

Therefore, when an appellant contends that the Secretary erred in complying with the VCAA notice requirements, certain pleading requirements must be met to enable the Court to determine (1) whether there was error and, if so, (2) whether that error resulted in prejudice to the appellant. *See Butler v. Principi*, 244 F.3d 1337, 1340 (Fed. Cir. 2001) ("Although the veterans benefits adjudication system is nonadversarial and paternalistic, the veteran still has certain legal procedural requirements to move forward with a claim." (citation omitted)). This burden encompasses making a "prima facie" case. *See Hjelvik v. Babbitt*, 198 F.3d 1072, 1074-75 (9th Cir. 1999), *but see Moore v. Kulicke & Soffa Indus., Inc.*, 318 F.3d 561, 566 (3d Cir. 2003); *see also Wagner v. United States*, 365 F.3d 1358, 1362 (Fed. Cir. 2004). If an appellant asserts with specificity how an error was prejudicial, it becomes the Secretary's burden to demonstrate that the error was clearly nonprejudicial to the appellant or that the error was not one that affected the "essential fairness" of the adjudication. *See McDonough*, 464 U.S. at 553.

We have previously explained the various elements of notice and the pleading burdens for alleging error in each of those elements. *See Mayfield I*, 19 Vet.App. at 122-24. As stated above, section 5103(a) requires the Secretary to inform a claimant of any information and evidence not of record that is necessary to substantiate the claim. *See Quartuccio*, *supra*. A first-element notice error concerns the Secretary's failure to provide a claimant with notice regarding the information and evidence necessary to substantiate the claim. For example, it would be considered first-element

notice error where the Secretary fails to advise a claimant that a service-connection claim generally requires (1) medical evidence of a current disability; (2) medical or, in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the claimed in-service disease or injury and the present disability, *see Caluza v. Brown*, 7 Vet.App. 498, 506 (1995), *aff'd per curiam*, 78 F.3d 604 (Fed. Cir. 1996) (table). This error fails to provide a key element of notice to the claimant of what it takes to substantiate a claim, thereby precluding a claimant from participating effectively in the processing of his or her claim, substantially defeating the very purpose of section 5103(a) notice. *See Pelegrini*, 18 Vet.App. at 122 (explaining that "the very purpose of requiring that a claimant whose claim is missing necessary evidence be notified of the information and evidence needed to substantiate the claim is so that the claimant and/or VA can produce that missing evidence"); *see also Mayfield II*, 444 F.3d at 1333.

Accordingly, even if an appellant fails to assert specifically how any alleged notice error prejudiced him or her, the substantive nature of that alleged notice error is such that the error, if found, has the natural effect of producing prejudice. *See Marciniak, supra*. Thus, when the appellant sufficiently pleads a first-element notice error, the burden shifts to the Secretary to demonstrate that there was no error or that the appellant was not prejudiced by any failure to give notice as to this element. *Cf. Daniels v. Brown*, 9 Vet.App. 348, 353 (1996).

Section 5103(a) also requires the Secretary to inform a claimant of what information and evidence the Secretary will seek to obtain, if any, and what information and evidence the claimant is expected to provide, if any. *See Quartuccio, supra*. VA's failure to provide notice on who should provide what information and evidence are considered second- and third-element notice errors. *Mayfield I*, 19 Vet.App. 122-23. An allegation of these errors alone does not demonstrate that an appellant was precluded from effectively participating in the processing of his or her claim. They do not have the natural effect of producing prejudice. *Id*. Prejudice can only arise from these kind of errors if an appellant demonstrates that he or she failed to submit evidence as a result of not being advised to do so, or that the Secretary failed to seek to obtain evidence that he should have obtained. *See Pelegrini, supra*. Therefore, these errors must be pled with specificity with regard to both the error and how the appellant was prejudiced.

10

By regulation the Secretary must "request that the claimant provide any evidence in the claimant's possession that pertains to the claim." 38 C.F.R. § 3.159(b)(1). This is the "fourth element" of notice and concerns VA's failure to request from a claimant any evidence in his or her possession that pertains to the claim, and would be prejudicial only if the claimant actually had evidence in his or her possession that he or she had not previously submitted and that was of the type that should be considered by the Secretary in assessing the claim. *Pelegrini*, 18 Vet.App. at 121. Only the claimant would know what information and evidence he or she possesses, and, therefore, he or she carries the burden of demonstrating that this notice error was prejudicial, i.e. pleading with specificity how not providing that evidence effected the essential fairness of the adjudication. Any failure to do so is a failure to carry his or her burden regarding prejudice.

Finally, it is well established that a claimant must be given the required section 5103(a) notice prior to the VA's decision on a claim. *Mayfield II*, 444 F.3d at 1333; *see Pelegrini*, 18 Vet.App. at 120. A timing error may be cured, however, by a Board remand to the RO for a new VCAA notification followed by a readjudication of the claim. *Mayfield II, supra.* A timing of notice error is the type of error that does not have the natural effect of producing prejudice and, therefore, prejudicial error must be pled with specificity.

### 2. The Scope of the Court's Review in Determining Prejudice

The Federal Circuit has emphasized that this Court must "'take due account of the rule of prejudicial error' in all cases addressing the notice requirements in section 5103(a)." *Conway*, 353 F.3d at 1375 (quoting 38 U.S.C. § 7261(b)(2)). As previously stated, "[d]ecisions of the Board shall be based on the *entire record in the proceeding* and upon consideration of *all evidence and material of record* and applicable provisions of law and regulation." 38 U.S.C. § 7104(a) (emphasis added). Although all evidence must be considered by the Board, we recognize that only "material evidence" need be discussed in the Board's decision. *See Dela Cruz v. Principi*, 15 Vet.App. 143, 149 (2001) ("The Court has consistently found that a discussion of all the evidence is not required when, as in the present case, the Board has supported its decision with thorough reasons or bases regarding the relevant evidence and further adjudication would not benefit the appellant."); *Caluza*, 7 Vet.App. at 506 (holding that pursuant to section 7104(d)(1), Board is required to provide written statement of reasons or bases for its findings and conclusions on all material issues of fact and law

11

presented on the record). Accordingly, a discussion of the notice requirements of section 5103(a) and § 3.159(b) may not be required in every case. *See* 38 U.S.C. § 7104(d)(1); *see also Allday*, 7 Vet.App. at 527; *Gilbert*, 1 Vet.App. at 56-57; *but see Charles v. Principi*, 16 Vet.App. 370, 373-74 (2002) (holding that Board's failure to discuss adequately amended duty to notify, when amendment occurred while the appellant's claim was pending at the Board, was error). Indeed, neither Mr. Overton nor his counsel argued to the Board that he was not provided adequate section 5103(a) notice. *See* R. at 505. We make no determination regarding whether or not discussion of the notice requirements was required in this case. However, when the Board discusses the adequacy of section 5103(a) notice, that discussion generally must be adequate to enable an appellant to understand the precise basis for the Board's decision, as well as to facilitate informed review in this Court. *See* 38 U.S.C. § 7104(d)(1); *Allday* and *Gilbert*, both *supra*. An inadequate discussion is an error that may or may not be prejudicial.

When the Board makes a determination on notice, there is every reason to presume that the Board complied with its statutory directive that such decision be based on a thorough review of the entire record before it. *See* 38 U.S.C. § 7104(a). Thus, to examine whether an appellant had a meaningful opportunity to participate in the adjudication of his or her claim and was, therefore, not prejudiced by any notice error, we too must review all of the evidence that presumably was reviewed by the Board at the time of its decision, especially where the appellant had counsel representing him before the Board. *See Barnett v. Brown*, 83 F.3d 1380, 1384 (Fed. Cir. 1996) (Federal Circuit declining jurisdiction to review this Court's "factual determination" that appellant was not prejudiced by alleged inadequacies by the RO in providing notice regarding an issued addressed by the Board); *see also Dyment v. Principi*, 287 F.3d 1377, 1381-82 (2002) (Federal Circuit holding that this Court appropriately reviewed Board's decision that "the totality of the evidence did not support [the appellant's claim]").

### 3. The Effect of Having Representation by Counsel Before VA

There is a recognized difference in some contexts in the treatment of cases by VA and by the Court that is based on whether a claimant is represented by counsel. *Cf. Andrews v. Nicholson*, 421 F.3d 1278 (Fed. Cir. 2005) (VA's duty to sympathetically read a veteran's pleading does not apply to pleadings filed by counsel); *Johnston v. Nicholson*, 421 F.3d 1285 (Fed. Cir. 2005) (VA's

CUE regulation "is properly read to require that the veteran, represented by counsel, identify before the Board the particular provision in the regulations on which he relies"); *see also Janssen v. Principi*, 15 Vet.App. 370, 374 (2001) (a representative of the appellant, who is presumed to know the facts and the law, may knowingly and intentionally relinquish or surrender an appealable right). A claimant's representation by counsel does not alleviate VA's obligation to provide compliant notice; however, that representation is a factor that must be considered when determining whether that appellant has been prejudiced by any notice error. VA communications to the claimant and his or her counsel, the claimant's actions and communications to VA, and the counsel's actions and communications to VA will signal whether, under the circumstances of each case, it has been demonstrated that the appellant had a meaningful opportunity to participate effectively in the processing of his or her claim. Furthermore, an attorney has the ethical duties of communicating with the client and of zealously representing the client's interest. *See* ABA MODEL R. PROF. CONDUCT 1.3 (Diligence), 1.4 (Communications) (2004); *see also Baldridge v. Nicholson*, 19 Vet.App. 227, 247 (2005) ("Under Rule 4(a) of the Court's Rules of Admission and Practice, the Court has stipulated that 'unless otherwise provided by specific rules of the Court, the disciplinary standard for practice is the Model Rules of Professional Conduct adopted by the American Bar Association on August 2, 1983, as amended.'"). Therefore, it is not unreasonable to conclude that an appellant's attorney is acting with the full authority and knowledge of his client and thus, to attribute to his client the attorney's actions and communications.

### D. Application of the Rule of Prejudicial Error

As we ruled in *Mayfield I*, reaffirmed in *Coker*, *supra*, and hold here, an appellant must identify with considerable specificity a notice error, especially in light of a Board determination that adequate notice was provided, and, as to second-, third-, and fourth-element notice errors, must further identify, again with considerable specificity, how the essential fairness of the adjudication was compromised by that error, i.e. leaving him or her unable to meaningfully participate in the adjudication of the claim. Mr. Overton, through counsel, argues as to each of his claims that the Board erred by finding that adequate notice had been provided to him because none of the documents relied upon by the Board provided him specific information on what evidence he needed to provide to substantiate his claims; he maintains that such lack of information compromised the essential

fairness of the adjudication. App. Br. at 3-5; App. Supp. Memo. of Law at 1. He further contends that had VA provided the required first-element notice under the VCAA, "indicating specifically what information or evidence was needed to substantiate his claim, [he] may well have been able to provide his own medical evidence from private physicians addressing his claims." App. Supp. Memo. of Law at 2.

Mr. Overton's allegation of a first-element notice error is of the type that has the "natural effect" of producing prejudice. Therefore, assuming the existence of such an error, the burden shifts to the Secretary to demonstrate a lack of prejudice in terms of the fairness of the adjudication and opportunity for Mr. Overton's meaningful participation in the processing of his claims. *See Kotteakos v. United States*, 328 U.S. 750, 760 (1946) (Recognizing, in criminal case, that "if the error is of such a character that its natural effect is to prejudice a litigant's substantial rights, [then] the burden of sustaining a verdict will . . . rest upon the one who claims under [the verdict]."). The Secretary argues that any notice error is harmless because the various documents sent to Mr. Overton concerning the development of each of his claims would cause a reasonable person to understand what was necessary for the claims to be substantiated. Secretary's Suppl. Mem. of Law at 4. Because Mr. Overton concedes that any failure to provide § 3.159(b) notice regarding his claims is nonprejudicial, we will not address any potential deficiency in the § 3.159(b) notice. *See* App. Suppl. Mem. of Law at 1; *see also Mayfield I*, *supra*.

To find that VA complied with section 5103(a), the Board summarily relied on "communications from the VA to the veteran, including the August 1998 [S]tatement of the [C]ase, the December 2000 Board decision, RO letters dated in December 2000 and May 2001, and the June 2002 [SSOC]." R. at 6. However, only the May 2001 letter could have potentially been considered adequate under section 5103(a). *See Mayfield II, supra*. Nevertheless, as instructed in *Mayfield II*, because the Board provided no specific discussion regarding how the May 2001 letter alone satisfied the notice requirements, we will not make such a determination. *Id*. Thus, presuming error, we now must take due account of the rule of prejudicial error, and decide if that error, as pled by Mr. Overton, was prejudicial to him. *See* 38 U.S.C. § 7261(b); *Mayfield II*, 444 F. 3d at 1337 (stating "harmless error statute . . . applies to violations of the notice requirements of section 5103(a)"). To do so, we will examine the entire record, including the May 2001 letter referred to by the Board to

14

determine if, during the processing of his claims, he had a meaningful opportunity to participate. If so, taking due account of the rule of prejudicial error, the Board's error was nonprejudicial.

### 1. Right- and Left-Knee Claims

When considering whether Mr. Overton received adequate section 5103(a) notice, the Board erred by relying on various postdecisional documents that were unrelated to the pre-decisional communications that provided notice of the elements found in 5103(a). *See Mayfield II*, 444 F.3d at 1333. For the following reasons, however, that error was nonprejudicial.

Mr. Overton, through his counsel, first sought increased ratings for his knee disabilities in September 1993. R. at 260-62. At that time he recited the specific regulations and diagnostic codes that he felt VA should consider in adjudicating his claim, and stated that his "disability has increased in severity" and that he was experiencing "pain, weakness[,] and functional loss." *Id.* at 261-62. Ratings in excess of 10% for each knee were denied by the RO in October 1994. *See* R. at 283 ("In determining evaluations for disability involving the knee, consideration is given to objective evidence of limitation of flexion and extension, subluxation, lateral instability, painful motion, weakness and radiological findings demonstrating joint abnormality."). Mr. Overton disagreed and in October 1995 the RO awarded an increased rating for his right knee (to 20% disabling), and continued the 10% rating for his left knee. That decision described the criteria used to determine knee disability ratings in general, the specific requirements for the rating Mr. Overton was seeking, and why his disability picture did not warrant higher ratings than those assigned. *See* R. at 316 (discussing the specific criteria for 10%, 20%, and 30% ratings and explaining how Mr. Overton's medical evidence did not meet the higher-rating criteria).

Thereafter, from 1995 through 2002, Mr. Overton, through counsel, continued his disagreement with his assigned ratings, and on numerous occasions received detailed information from VA as to the criteria necessary for a higher rating, and the reasoning as to why his condition did not demonstrate that increase was warranted. *See, e.g.,* R. at 326-30 (1995 SOC detailing relevant diagnostic codes and reviewing Mr. Overton's medical evidence), 390-96 (1998 RO denial comparing Mr. Overton's medical picture to next higher rating criteria), 408-20 (1998 SOC - same), 435-37 (2000 Board remand discussing need for medical examination and consideration of *DeLuca v. Brown*, 8 Vet.App. 202 (1995)).

15

In May 2001, prior to the RO's June 2002 denial of his claims, the RO sent to Mr. Overton, through his counsel, a letter notifying him of the enactment of the VCAA, and detailing the new notice and assistance requirements as they pertained to his claim. Regarding his knee disabilities, the letter stated:

> This letter will tell you about VA's duty to explain to you what information or evidence we need to grant the benefit you want and the VA's duty to assist you in obtaining evidence for your claim as well as what the evidence must show to establish your claim. Also, this letter will tell you what we have done to help with your claim and what information and evidence we still need from you including when and where you should send it. Finally, this letter will tell you how to contact us, if that is necessary.

R. at 483. The letter also stated that, for Mr. Overton to establish entitlement to an increased rating, "the evidence must show that [his] service[-]connected disability or disabilities have worsened and now meet the criteria for a higher evaluation." R. at 484. He was advised that an increase in severity could be shown by "medical evidence or other evidence showing [that his] service[-]connected conditions had become worse or more disabling." *Id*. He was told that medical evidence includes such things as "doctors' records, medical diagnoses, and medical opinions." R. at 483. Further, the letter stated that VA would try to help him get such things as medical records, employment records, or records from other federal agencies, but that it was his responsibility to make sure these records were received by VA. *Id*. He was notified that VA may schedule him for an examination, and that he could submit his own statement or statements, or those of other people, describing his disability symptoms. R. at 485. Thereafter, an additional SSOC issued, again detailing the requirements for increased ratings for his knee claims, and discussing *DuLuca, supra*, in relationship to Mr. Overton's medical evidence. R. at 490-92.

In the adjudication of a claim for a rating increase, "'the present level of disability is of primary concern.'" *Pierce v. Principi*, 18 Vet.App. 440, 445 (2004) (quoting *Francisco v. Brown*, 7 Vet.App. 55, 58 (1994)). Reviewing the entire record, as did the Board, *see* section 7104(a), and examining the various predecisional communications, we conclude that the evidence establishes that Mr. Overton, with and through his counsel, was afforded a meaningful opportunity to participate in

the adjudication of his claims for increased ratings for his knee disabilities.[1]  He was repeatedly instructed on what the evidence had to show to obtain increased disability ratings for his knees.  The May 2001 letter from VA notified him that to obtain an increased rating, the evidence must show (1) an increase in severity of his service-connected disability, (2) that he should submit any medical treatment records in his possession, (3) that VA would assist him in obtaining any identified medical treatment records, and (4) that VA may schedule him for a medical examination or opinion if necessary.  *See* R. at 483-86.  Accordingly, any notice error by the Board on this matter was nonprejudicial.  *See* 38 U.S.C. § 7261; *Conway* and *Soyini*, both *supra*.  There being no other errors alleged as to this claim, the Board's decision on that matter will be affirmed.

### 2. TDIU

With regard to VA's adjudication of Mr. Overton's claim for TDIU, the record on appeal establishes that, when applying for TDIU in September 1993, Mr. Overton's counsel stated to the RO:

> The Veteran is claiming individual unemployability due to service-connected disability in accordance with 38 C.F.R. [§] 4.16.

> The Veteran is unable to secure and follow substantially gainful occupation by reason of service-connected disabilities.  Pursuant to 38 C.F.R. [§] 4.16(b), the VA should submit this Veteran's case to the Director of Compensation and Pension Service for extra-schedular consideration.

R. at 262.  Further, in August 1995, Mr. Overton, while still represented, filed with the RO a VA Form 21-8940, Application for Increased Compensation Based on Unemployability.  R. at 304-05, 315.  That pre-printed application form used for filing a TDIU claim advised applicants: "This is a claim for compensation benefits based on unemployability.  When you complete this form you are claiming total disability because of service-connected disabilty(ies) which have/has prevented you from securing or following any substantially gainful occupation." R. at 304.  This predecisional form requires a claimant for TDIU to certify on the application that, because of his or her service-

---

[1]  We need not, and do not, decide here (1) whether the Court may examine the May 2001 letter, alone, to determine whether Mr. Overton had a meaningful opportunity to participate in the adjudication of his increased-knee-rating claims, and, if so, (2) whether that letter alone provided such a meaningful opportunity as to render any notice error nonprejudicial.

connected disabilities, he or she is unable to secure or follow any substantially gainful employment. *See id.* The RO, in a June 1998 decision denying the claim, informed Mr. Overton and his counsel of the following:

> Entitlement to [TDIU] is denied because the claimant has not been found unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities. Service-connected disabilities currently evaluated as 30[%] do not meet the schedular requirements for entitlement to [TDIU]. 38 C.F.R. § 4.16 [(1997)] provides that individual unemployability may be granted where there is one disability evaluated as 60[%] disabling, or two or more disabilities, one of which is 40[%] with a combined evaluation of 70[%] or more. These percentage standards are set aside only in exceptional cases where there is an unusual factor of disability rendering the veteran unable to secure or follow a substantially gainful occupation. . . . This case has not been submitted for extra-schedular consideration because there are no exceptional factors or circumstances associated with the veteran's disablement.
>
> The evidence of record does not show that the veteran is unemployable due solely to his service connected right[-] and left[-]knee and skin condition[s].

R. at 395. In the July 1998 SOC, the RO again advised Mr. Overton of the pertinent laws and regulations regarding TDIU and informed him that his claim was denied because he had not been "found unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities." R. at 408-20. In December 2000, the Board remanded Mr. Overton's claim to the RO for development and stated:

> The veteran should be afforded a VA orthopedic examination to ascertain the severity of [his] service-connected residuals of bilateral knee injuries. . . . *The examiner should also offer an opinion as to whether the veteran's residuals of bilateral knee injuries, to include post-traumatic arthritis, render him unable to engage in or maintain employment. The claims file must be made available to the examiner for review.*
> The veteran should also be provided with a VA skin examination to determine the current severity of his service-connected tinea versicolor. The *claims file* should be made available to the examiner for review.

R. at 435-36 (emphasis in original). The May 2001 letter that followed did not notify Mr. Overton and his counsel specifically of what was necessary to substantiate his TDIU claim, however, it did inform him that VA would assist him in obtaining evidence for all of his claims, what he could do to assist in the development of his claims, and provided information on how any questions about the

18

development of his claims could be answered. *See* R. at 483-87. These documents were provided before the readjudication of the TDIU claim by the RO in June 2002.

Although the Board erred by relying on various postdecisional documents that were unrelated to the predecisional communications that provided notice of the elements found in 5103(a), that error as to Mr. Overton's TDIU claim was nonprejudicial. Reviewing the "entire record," as did the Board, *see* section 7104(a), we conclude that the evidence establishes that, throughout the adjudication process, VA provided to Mr. Overton and his counsel information that allowed Mr. Overton the opportunity to participate meaningfully in the adjudication of his TDIU claim. *See* R. at 395, 408-20, 436-37, 483-87. Furthermore, and more importantly, the record discloses that Mr. Overton, through his counsel, demonstrated an awareness of the relevant regulations and criteria for the TDIU rating he was seeking. They cited to specific regulations in his September 1993 application (R. at 262), and they certified on his formal TDIU application that, because of his service-connected disabilities, he was unable to secure or follow any substantially gainful employment (R. at 304). Reviewing the various predecisional communications and taking into consideration Mr. Overton's representation by counsel from the filing of the claim throughout the adjudication process, we hold that the record demonstrates that Mr. Overton had an opportunity to meaningfully participate in the adjudication of his TDIU claim. 38 U.S.C. § 7261; *see Conway* and *Mayfield I*, both *supra*. Therefore, he was not prejudiced by any notice error concerning TDIU. *See Soyini* and *Eddy*, both *supra*. There being no other errors alleged as to the substantive denial of this claim, the Board's decision on that matter will be affirmed.

### *3. Tinea Versicolor*

Concerning Mr. Overton's tinea versicolor claim, the Secretary maintains that it is "unreasonable to believe that [Mr. Overton] did not understand the need to submit evidence showing that his service-connected conditions had worsened." Secretary's Supp. Memo. of Law at 4. He argues that the May 2001 letter from the RO informed Mr. Overton of the new VCAA regulations and of what he needed to substantiate his increased-rating claims, and he contends that "[t]here can be no prejudice when the purpose behind the notice has been satisfied." *Id*. at 2, 4.

Although the May 2001 notice letter discussed generally what evidence was necessary to obtain an increased disability rating, the letter explicitly listed Mr. Overton's claims as "pending

appeals for service connection for a neuropsychiatric disorder, entitlement to increased evaluations for your service[-]connected bilateral knee conditions, and entitlement to [TDIU]." R. at 483. There was no mention of Mr. Overton's increased rating claim for tinea versicolor. *See* R. at 483-87. Thus, the letter cannot be considered informative on Mr. Overton's tinea versicolor claim. Moreover, although the general information provided to Mr. Overton regarding his rating increase claims for his bilateral knee conditions was equally true for his tinea versicolor claim, nothing in the RO's May 2001 letter notified him of that fact.

The only other documents relied upon by the Secretary to demonstrate a lack of prejudice are the October 1995 and June 1998 RO decisions, and the June 2002 SSOC. Secretary's Supp. Memo. of Law at 4. The SSOC came after the RO's readjudication of the claim and, therefore, could not have assisted Mr. Overton in participating in that adjudication itself. Further, although RO decisions in October 1995 and June 1998 explained the requirements for disability ratings of 0% and 10% for tinea versicolor (R. at 316, 395), nothing in the record indicates that Mr. Overton was ever adequately informed of what *evidence* was necessary to substantiate his claim for a compensable disability rating for that condition. Moreover, the record does not demonstrate that Mr. Overton had an awareness of that information. *See* R. at 1-510. Therefore, we conclude that the Secretary has not met his burden of demonstrating a lack of prejudice. Because we are not convinced that Mr. Overton was able to meaningfully participate in the adjudication of this claim, we cannot conclude that the presumed notice error was nonprejudicial. Accordingly, a remand is required to correct that error and to provide, if necessary, VCAA compliant notice. *Cf. Soyini* and *Eddy*, both *supra*.

### III. CONCLUSION

Upon consideration of the foregoing, that portion of the September 26, 2002, Board decision that denied Mr. Overton's claims for increased ratings for his right- and left-knee conditions and denied him a rating of TDIU is AFFIRMED. That portion of the Board decision that denied his claim for an increased rating for tinea versicolor is VACATED and that matter is REMANDED to the Board for further adjudication consistent with this opinion.

LANCE, *Judge*, concurring in part and dissenting in part: I fully concur in the majority's discussion of how this Court is to "take due account of the rule of prejudicial error" and the burdens and pleading requirements of the parties in this context. I write separately, however, because I disagree with the majority's narrow view of the effect that representation by counsel before VA has on a claimant's opportunity to meaningfully participate in the adjudication of his or her claim. In my opinion, the fact that Mr. Overton has been represented by the same counsel since 1993 in pursuit of increased ratings for his service-connected disabilities and an award of TDIU is dispositive.

To be clear, I agree with the majority that a claimant's representation by counsel does not relieve the Secretary of his statutory obligation, upon receipt of a complete or substantially complete application, to provide a claimant and the claimant's representative with section 5103(a) notice. However, when considering whether the Secretary has provided VCAA compliant notice, we are also required to "take due account of the rule of prejudicial error." *Conway*, 353 F.3d at 1365. If a claimant has been provided a meaningful opportunity to participate in the adjudication of his or her claim, any notice error is not prejudicial. *Ante* at 8.

The majority acknowledges that representation by counsel will effect a claimant's ability to meaningfully participate in the adjudication of his claim. Yet, when considering whether the failure to provide compliant notice was prejudicial, the majority would limit the effect of attorney representation and only attribute to the claimant "the attorney's actions and communications." *Ante* at 13. This ignores an attorney's professional and ethical responsibility to be competent and knowledgeable of the law. *See* MODEL RULES OF PROF'L CONDUCT R. 1.1 ("A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."); *see also* U.S. VET. APP. R. ADM. & PRAC. 4(a) (adopting Model Rules of Professional Conduct). It also ignores the reality that "[t]he relationship between an attorney and the client he or she represents . . . is one of agent and principal." *Veal v. Geraci*, 23 F.3d 722, 725 (2nd Cir. 1994) ("A person has notice of a fact if his agent has knowledge of the fact, reason to know it or should know it, or has been given a notification of it, under circumstances coming within the rules applying to the liability of a principal because of notice to his agent.") (quoting Restatement (Second) of Agency § 9(3) (1958)); *see also Taylor v. Illinois*, 484 U.S. 400, 417-18 (1988) (noting it would be "highly impracticable" to distinguish

21

between clients and attorneys in assessing the client's responsibility for how his attorney pursues his case).

It is precisely because of the nature of the attorney-client relationship and the attorney's specialized knowledge and experience that I cannot endorse the majority's view which seemingly requires counsel to demonstrate his competence before we attribute his knowledge to a claimant.[2] *Cf. Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 93 (1990) ("Under our system of representative litigation, "each party is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.'") (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 634 (1962) (quoting *Smith v. Ayer*, 101 U.S. 320, 326 (1880)); *Link*, *supra*, (rejecting as meritless petitioner's contention that dismissal of his claim because of his counsel's unexcused conduct imposes an unjust penalty on the client, thus holding him accountable for the consequences of the acts and omissions of his attorney). The Federal Circuit's recent decision in *Andrews*, *supra*, makes clear that represented claimants in the VA adjudication system are treated differently than those who are proceeding pro se. The Federal Circuit held, without any qualification, that VA's duty to sympathetically read a claimant's pleadings does not apply to pleadings filed by counsel. *Andrews*, 421 F.3d at 1283. Given this distinction already drawn by the Federal Circuit, I do not think it unreasonable to further attribute to a claimant his or her attorney's knowledge of the relevant law and what information and evidence is necessary to substantiate a claim.

The majority's limited focus would create a presumption that an attorney does not know how to prove a claim for VA benefits unless and until told how to do so by the Secretary. This presumption of attorney ignorance is fundamentally inconsistent with an attorney's ethical obligation to know the relevant law in any area in which he or she practices. Therefore, I cannot endorse the

---

[2] To the extent that an attorney may be incompetent, the law does not leave a claimant without remedy. The claimant's remedy is against the attorney in a claim for legal malpractice. *Cf. Nelson v. Nicholson*, 19 Vet.App. 545, 555 (2006) (noting that it was for the Alaska Bar Association to determine whether attorney's neglect in missing filing deadline for bringing a timely appeal to this Court should give rise to disciplinary action).

position that a claimant who has had continual attorney representation throughout did not have a meaningful opportunity to participate in the adjudication of his or her claim.

Notwithstanding this general statement, I recognize that there may be circumstances in which a notice error may be prejudicial to a claimant who is represented by counsel. For example, there may be instances where an attorney's involvement is so limited or too late in the process that VA's failure to provide section 5103(a) notice would have effected the claimant's ability to meaningfully participate in the adjudication of his or her claim. That is not this case. Mr. Overton has been continuously represented since 1993 by the same counsel and, therefore, it cannot be said that he did not have a meaningful opportunity to participate in the adjudication of his claims merely because his attorney did not communicate to VA his awareness of the relevant law and the information and evidence necessary to substantiate Mr. Overton's claims. *See ante* at 12-13. Accordingly, I would find Mr. Overton's continuous representation by counsel dispositive and would not engage in the Court's discussion of whether the various documents in the record gave Mr. Overton a meaningful opportunity to effectively participate in the adjudication of his claim. It is incredulous that counsel was not aware of the information or evidence necessary to substantiate Mr. Overton's claims. For this reason, I must respectfully disagree with the majority's application of the rule of prejudicial error in this case and dissent from the remand of Mr. Overton's tinea versicolor claim.