LANCE: Judge,
dissenting:
I believe that the appellant had a meaningful opportunity to participate in the Board decision on appeal and that the Court need go no further than such a conclusion to resolve this appeal. I also have grave doubts about the conclusion that the notice requirements of the VCAA apply to adversarial proceedings where the Secretary’s role is that of a neutral stakeholder. It does not seem to me that the language of the statute or the intent of Congress to facilitate the generally nonad-versarial claim process can be applied to require the Secretary to give notice to two competing groups as to how to defeat each other’s assertions of entitlement to a sum of money that can only be awarded to one or the other. The majority’s failure to recognize that Congress drafted the VCAA to facilitate nonadversarial claims and its failure to describe with any specificity what must be included to provide valid notice to parties seeking to disprove each other’s positions leaves the Secretary in the awkward position of having not provided valid notice without sufficient guidance as to how to provide valid notice while remaining a neutral stakeholder. Leaving the Secretary in this position is both unfair and unnecessary.
I. MS. GORDON’S PARTICIPATION IN THE DECISION ON APPEAL
For the last seven years, the only substantive issue in this case has been whether the veteran performed an overt act sufficient to effectuate his intent to change the beneficiaries of his NSLI policy. R. at 192-96. Even though Ms. Gordon was not a party to the February 2000 Court proceeding where this issue became the focus of the dispute, she was a party to the *284 January 2001 Board decision that there was no sufficient overt act. R. at 219-21. In May 2001 Ms. Gordon appealed the 2001 Board decision to this Court through counsel and obtained a remand. R. at 236. Counsel continued to represent her on re-adjudication at the Board. R. at 244. Pri- or to the decision on appeal, the Board sent counsel a letter explicitly giving counsel 90 days to submit additional argument and evidence. R. at 246.
To me, this clearly provided Ms. Gordon the opportunity to meaningfully participate in her claim. The sole substantive dispute during the entire time Ms. Gordon was represented by counsel before VA was whether she had proven the veteran took an overt act sufficient to effectuate the intent he expressed in the divorce agreement. Even assuming — as the majority did in Overton v. Nicholson, 20 Vet.App. 427 (2006) — that attorneys do not know how to prove a claim unless the record demonstrates otherwise, it is difficult to see how the majority finds attorney lack of knowledge in this case. As stated above, during the entire period that counsel represented Ms. Gordon before the Secretary there has only been one substantive issue in dispute. Such would be obvious to any attorney who reviewed the Court’s February 2000 remand or the Board’s January 2001 decision. Moreover, unlike a claim for benefits based upon medical disability, this fact in dispute does not require any expert evidence nor does it raise any potentially complicated issues of causation. The only way to conclude that Ms. Gordon’s attorney did not know what evidence she needed to submit is to presume that the attorney did not even take the minimal step of reviewing the basic history of this case; and that presumption, I believe, is unfair to counsel and her reputation. For the reasons stated in my dissent in Over-ton, I believe the majority’s presumption of attorney error or oversight makes even less sense when applied to the facts of this case. 20 Vet.App. at 444-46 (Lance, J., dissenting in part).
Moreover, I do not agree with the majority’s conclusion that failing to submit evidence in response to the Board’s explicit letter inviting further evidence and argument is proof that Ms. Gordon did not have a meaningful opportunity to participate in the adjudication of her claim. As the Court noted recently in Prickett v. Nicholson, 20 Vet.App. 370, 377 n. 2 (2006), the failure of an informed party to submit evidence may be regarded as a waiver of the right to submit additional evidence. Given the explicit letter from the Board to counsel providing the opportunity to submit evidence prior to the Board’s decision, I would construe the lack of a response as a waiver rather than evidence that counsel does not know how to prove an overt act by the veteran. Accordingly, I do not believe that it is necessary to decide anything more than whether the appellant was able to meaningfully participate in the proceedings below.
II. THE APPLICABILITY OF VCAA NOTICE
For the reasons stated above, I would not reach the question of whether VCAA notice applies to disputes between potential beneficiaries of an NSLI policy. I believe that this question is much more difficult than the majority acknowledges. Although the majority opinion correctly states that the statutory question must be resolved by looking at the “ ‘ “whole law, and to its object and policy,” ’ ” ante at 276 (quoting Moreau v. Brown, 9 Vet.App. 389, 396 (1996) (quoting Richards v. United States, 369 U.S. 1, 11, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962))), the analysis is actually narrowly drafted so as to read 38 U.S.C. § 5103(a) in isolation from the whole of *285 title 38 and the intent and policy behind the VCAA.
A. The Purpose of the VCAA
Congress passed the VCAA because it believed Morton v. West, 12 Vet.App. 477 (1999), “constructed a significant barrier to veterans who need assistance in obtaining information and evidence in order to receive benefits from the VA.” 146 Cong. ReC. H9913 (Oct. 17, 2000) (statement of Mr. Stump). In Morton, the Court interpreted the version of 38 U.S.C. § 5107 then in effect as prohibiting the Secretary from providing most forms of assistance to benefits claimants who had not submitted “well grounded” claims. 12 Vet.App. at 480-85. The legislative history of the VCAA is replete with statements citing Morton as the basis for enacting the VCAA. Overall, the sentiment motivating the VCAA was captured by Senator Rockefeller when he indicated that the VCAA was necessary because “[t]he system to provide benefits to veterans was never intended to be adversarial.” 146 Cong. Reo. S9212 (Sept. 25, 2000).
This purpose was recognized by U.S. Court of Appeals for the Federal Circuit (Federal Circuit) in Paralyzed Veterans of America v. Secretary of Veterans Affairs, 345 F.3d 1334, 1346 (Fed.Cir.2003) when it invalidated part of the Secretary’s implementation of 38 U.S.C. § 5013 by concluding that the challenged “regulation is particularly prejudicial to claimants during the non-adversarial stages of disputes over benefits, when claimants rely on the strongly and uniquely pro-claimant character of the veterans’ benefits system and pursue their statutory entitlements without the assistance of legal counsel.” (internal quotation omitted).
Despite the intended focus of the VCAA, the majority applies the notice provisions of that statute to a proceeding that is inherently adversarial. In a dispute over NSLI proceeds, the Secretary acts as a stakeholder for money that cannot be awarded to all competing parties such as in an action in interpleader. See Fed.R.Civ.P. 22 (authorizing interpleader of parties); 67 (allowing a holder of disputed funds to deposit those funds with the court). In fact, the notes accompanying Rule 22 of the Federal Rules of Civil Procedure state that when Rule 22 was originally adopted in 1937, the advisory committee intended it to apply to “actions upon veterans’ contracts of insurance with the United States.” Fed.R.Civ.P. 22 Advisory Committee Note. No matter what decision the Secretary makes, there will be winners and losers. In such a circumstance, I believe that it is simply inappropriate to say that the pro-veteran character of the veterans benefits system requires the Secretary to notify each party as to how to defeat the other’s assertion of entitlement and then take up the role as neutral arbiter as to which party should prevail. In any NSLI decision, the obvious conflict of interest is very likely to lead to the perception that the outcome of the Secretary’s decision was tainted because the Secretary provided better advice to the party who won. Such a result would unfairly undermine the Secretary’s reputation as fair and neutral administrator of Title 38. I have strong doubts that such a result is required or desired.
B. The Plain Language of 38 U.S.C. § 5103(a)
Starting with the plain language of the statute, 38 U.S.C. § 5103(a) states: “Upon receipt of a complete or substantially complete application, the Secretary shall notify the claimant and the claimant’s representative, if any, of any information, and any medical or lay evidence, not previously provided to the Secretary that is necessary to substantiate the claim.” As to this lan *286 guage, the Secretary argues that a person seeking the proceeds of an NSLI policy is not a “claimant” because the proceeds are not a “benefit.” Although the majority makes a plausible case for the opposite result, I tend to agree with the Secretary’s position.
Rather than rehash this argument, I focus on the fact that the plain language of title 38 presents additional problems with the majority’s position that a dispute over NSLI proceeds is a “claim” for benefits. First, the notice requirement is introduced with a key timing clause. The required notice must be provided “[ujpon receipt of a complete or substantially complete application.” In Locklear v. Nicholson, 20 Vet.App. 410, 415 (2006), the Court recognized that this timing requirement was crucial to understanding the intended scope of VCAA notice. Accordingly, the Court ruled that section 5103(a) requires only a single, initial notice; not continuous mini-adjudications in the guise of notice. However, the majority’s conclusion amounts to a holding that multiple VCAA notices are required. The appellant in this case did not submit the “claim” that started the adjudication to award the NSLI proceeds at issue. That “claim” was submitted by the intervenor. Although the VCAA was not in effect at the time that the initial “claim” was filed, the majority opinion seems to require VCAA notice be issued not just upon receipt of the initial “claim,” but also whenever a new intervenor becomes involved. This is difficult to square with the timing language of the VCAA.
I also note that 38 U.S.C. § 5103(a) has no clause limiting it to a particular forum. Unlike the traditional nonadversarial claims that the Secretary adjudicates, disputes over NSLI proceeds may also be brought in Federal district court, a distinctly adversarial forum. See 38 U.S.C. § 1984 (granting jurisdiction to Federal district courts); Young v. Derwinski, 1 Vet.App. 70, 72 (1990) (holding that section 1984 jurisdiction is not exclusive). That statute also refers to “claims” for NSLI benefits. Id. Based on the plain-language analysis used by the majority, it would appear that the Secretary is also required to provide VCAA notice to NSLI proceeds “claimants” in Federal district court. It seems quite doubtful to me that Congress intended to change the rules of procedure in federal district court when it enacted the VCAA. Actions in Federal district court over interpleaded funds are adversarial and in that forum licensed counsel are presumed competent to represent their client’s interests.
Furthermore, applying the plain-language analysis used by the majority to other provisions in title 38 leads to highly suspect results. If the majority’s analysis is correct, then it would appear that 38 U.S.C. § 5108 applies to NSLI “claims.” That provision provides: “If new and material evidence is presented or secured with respect to a claim which has been disallowed, the Secretary shall reopen the claim and review the former disposition of the claim.” Given the majority’s conclusion that a dispute over NSLI proceeds is a “claim” within the meaning of chapter 51 of title 38, then the use of that word in section 5108 means that a decision by the Secretary on an NSLI “claim” can be reopened at any time based on the submission of new and material evidence so long as one disappointed claimant lives. If the Secretary changes the outcome on reopening this “claim,” would he have to seek disgorgement from the original beneficiaries? I have very serious doubts that Congress intended to extend the extremely loose level of finality appropriate for non-adversarial proceedings to an adversarial proceeding like this one even if the plain language of the statute suggests such an outcome. See also 38 U.S.C. §§ 5109A, *287 7111 (permitting decisions of the Secretary to be revised at any time upon showing clear and unmistakable error). It is unfortunate that even after 12 years of litigation (so far) the intervenor here will still not have any finality. It is more unfortunate that whoever prevails on remand must still be concerned about the finality of the award even decades after the proceeds are received.
For these reasons, I do not believe that the majority’s conclusion that the plain language of the statute is controlling is based on an examination of the “whole law, and its object and policy.” To fairly conclude that a dispute over NSLI proceeds is a “claim” within the meaning of chapter 51 of title 38, the conclusion should be based on more than just the language of one section. Given the breadth of provisions that use the word “claim,” a broader view is required before attaching that word to the dispute here.
C. The Legislative History of 38 U.S.C. § 5103
Even accepting that the plain language of the statute requires the result reached, I believe there is at least a colorable issue of whether the use of the word “subsection” in 38 U.S.C. § 5103(b)(2) is a drafting error. As the majority opinion admits, even where the language of the statute is found to be unambiguous, the Court must still analyze whether the apparent result “ ‘ “will produce a result demonstrably at odds with the intention of its drafters.” ’ ” Ante at 276 (quoting Gardner v. Derwinski, 1 Vet.App. 584, 586-87 (1991) (quoting Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982))). Although, the majority speculates how Congress would have phrased 38 U.S.C. § 5103(a) if it had intended a different result, it does not actually look at how that provision was drafted or at the expressed intent in the legislative history.
Prior to the VCAA, 38 U.S.C. § 5103(a) (1991) required the Secretary to inform claimants of the evidence necessary to complete an incomplete application. Section 5103(b) specifically provided that “[t]his section shall not apply to any application or claim for Government life insurance benefits.” (emphasis added). These provisions were identical to the 1958 version of 38 U.S.C. § 3003 (renumbered in 1991). Hence, while the present version of 38 U.S.C. § 5103 appears to state that subsection (a) applies to Government life insurance benefits while subsection (b) does not, no part of the pre-VCAA version section 5103 applied to Government life insurance benefits.
Turning to the history of the VCAA, the change from “section” to “subsection” occurred in the middle of the drafting process when two different proposals were merged. In July 2000, when the House of Representatives proposed H.R. 4864,106th Cong. (2000), it continued to use the word “section” in the new version of section 5103. H.R. 4864 proposed that section 5102 deal with incomplete applications, as well as VA’s duty to notify of additional information, lay and medical evidence, necessary to substantiate the claim. Subsection (d) of 5102 was entitled “Inapplicability to Certain Benefits” and maintained the identical language to the 1991 and 1958 versions, i.e., “this section shall not apply to any application or claim for Government life insurance benefits.” The Senate version of the VCAA, section 101 of S.1810, 106th Cong. (2000), did not address any duty to notify claimants. The Senate’s sole concern was the duty to assist in developing evidence. To summarize, the House bill contained a duty to notify that explicitly did not apply to Government life insurance benefits while the Senate bill had no duty to notify at all.
*288 The Senate and House Committees on Veteran’s Affairs produced a compromise version to reconcile the two bills. The compromise bill divided the House’s proposed section 5102(a) through (d) into sections 5102 and 5103. Section 5102 retained subsections (a) and (b). The new 5103(a) expanded on the duty to notify and took on what were subsections (c) and (d) of H.R. 4894. Without any explanation, the word “section” was converted to “subsection.” H.R. 9912, 106th Cong. (2000). In other words, despite the fact that the prior version of section 5103 explicitly did not apply to Government life insurance benefits and the fact that neither of the original bills contained a duty to notify that applied to Government life insurance benefits, when the proposals merged during the reorganization of the two bills being combined, that duty was suddenly created when the word “section” was changed to “subsection.”
The legislative history does not support the proposition that this change was the result of any intentional decision to expand the duty to notify proposed by the original House bill. Nothing in the history of either original bill suggests that anyone ever expressed a belief that the originally proposed duty to notify should be expanded to include Government life insurance benefits. Moreover, nothing in the statements explaining the merger of the two proposals acknowledges a change in the scope of the proposed duty to notify, much less provides a rationale for expanding the duty. Senator Specter presented the “compromise agreement” to the Senate, Amendment No. 4189, and stated in relevant part: “The Senate and House committees have now reached ... an agreement and have reconciled the differences between the Senate-and House-passed provisions. Those differences — which are, principally matters of tone and emphasis, not — substance — are contained in the proposed amendment to H.R. 4864....” 146 Cong. Rec. S9205 (Sept. 25, 2000) (emphasis added). Representative Stump provided the following relevant statements in his statement to the House introducing the compromise agreement:
As revised section 5102 would contain almost all of existing sections 5102 and 5103.... Subsections (c) and (d) of proposed section 5102 are identical to existing sections (a) and (b) of existing subsection 5103.... Proposed section 5102(b) clarifies the Secretary’s obligation to send notices to the claimant ... as to information the claimant must submit to complete the application. It would also require the Secretary to notify the claimant ... of any additional information and medical and lay evidence necessary to substantiate the claim.
146 Cong. Rec. H9914 (Oct. 17, 2000) (emphasis added). By referring to the final version as “identical” to the duty to notify originally proposed in the House, Representative Stump strongly indicates that the reorganization was not intended to expand the duty to notify beyond the version originally proposed.
Furthermore, Representative Stump also stated in discussing the compromise agreement:
The compromise version of revised section 5103 ... substantially maintains the current provisions of section 5103. However, it renames the title of the section ... [and] enhances the notice the Secretary is now required to provide to a claimant regarding information that is necessary to complete the application. ... The compromise agreement also maintains the language in current section 5103 relating to time limits, but expands that language to include “information or evidence.” It is not the Com *289 mittee’s purpose to modify the historical application of this provision....”
Id. (emphasis added). Again, his statements suggest that the compromise “maintained” the originally proposed duty to notify; not that it expanded that duty.
Despite the substantial questions raised by this history, the majority does not even discuss it or entertain the possibility that it is a mere drafting error that 38 U.S.C. § 5103(b)(2) says “subsection” instead of “section.” I recognize and strongly agree with the Federal Circuit’s statement that it takes “an extraordinarily strong showing of clear legislative intent in order to convince us that Congress means other than what it ultimately said.” Gardner v. Brown, 5 F.3d 1456, 1460 (Fed.Cir.1993); see Tropf v. Nicholson, 20 Vet.App. 317, 321 n. 1 (2006) (“Without standard word meanings and rules of construction, neither Congress nor the Secretary can know how to write authorities in a way that conveys their intent and no practitioner or — more importantly — veteran can rely on a statute or regulation to mean what it appears to say.”). However, in this case, the available material necessitates a more comprehensive analysis than the majority undertakes.
III. THE CONTENT OF VCAA NOTICE ON NSLI CLAIMS
My final concern with the majority opinion is that it does not adequately indicate what would be acceptable VCAA notice in this case. Although the majority decision states: “nothing in the record relied upon by the Board indicates that Ms. Gordon was ever adequately informed of what evidence was necessary to substantiate her NSLI beneficiary claim,” Ante at 282, it does not elaborate on what would be adequate notice in this case. In Kent v. Nicholson, 20 Vet.App. 1, 9-10 (2006), the Court made clear that adequate VCAA notice requires the Secretary to conduct a basic review of the status of the claim to determine what propositions must be substantiated. As to the appellant here it would seem that adequate VCAA notice would require the Secretary to see what the original “claimant” had submitted and inform the new “claimant” how to disprove the initial claim. Furthermore, if we assume that in future cases the Secretary will supply prompt VCAA notice, then it would appear that intervenors will generally have the advantage in that they should receive notice that may consider what the initial claimant submitted and how to rebut it.
This raises another question ignored by the majority. What does the Secretary need to do to provide adequate VCAA notice to Ms. Samargin? Under the majority’s analysis, both the appellant and the intervenor are “claimants.” Yet, the majority does not consider whether Ms. Sa-margin received adequate VCAA notice. Assuming she has not yet received adequate notice, it would appear that any notice supplied to her at this point would be focused on how to disprove the proposition that the veteran performed an overt act to effectuate his intent. Or perhaps the majority thinks that she is not entitled to notice because, as the current the prevailing party, her claim has been substantiated. See Dingess v. Nicholson, 19 Vet.App. 473, 491 (2006). Of course, this raises the question of whether prevailing below amounts to substantiation of the claim where the merits are still being appealed. Would the logic of Dingess apply to a claim that was “substantiated” at the time the VCAA was passed but became unsubstantiated thereafter? Perhaps the Court will be faced with this problem if the appellant prevails on remand. I would also note that it appears from the record that, because this dispute has continued for 12 *290 years, three of the four children involved are no longer minors. R. at 85, 89. This raises the question of whether any of them would require VCAA notice and whether notice would still be required for Ms. Gordon and Ms. Samargin.
Regardless of the particular result on remand, I fear that the lack of guidance provided by this opinion will mean that the fourth time this dispute is appealed to the Court, the arguments raised will again be procedural.
IV. CONCLUSION
Ultimately, I believe that the majority’s decision to expand the scope of the VCAA to include adversarial proceedings is insufficiently justified and raises many more concerns than are acknowledged. I also believe that the Board’s decision can be affirmed without even ruling upon this issue. However, assuming that the question were squarely presented, I do not see how it could be properly addressed without taking a broader look at the VCAA and the case that inspired it, Morton. The nonad-versarial proceedings at issue in Morton are simply not comparable to the inherently adversarial proceeding on appeal here. Nonetheless, if there is one aspect of Morton applicable here, then it would be the conclusion. After reaching the result in Morton, the Court ended the opinion by observing that “it is possible that after evaluating such considerations as fairness, equity, and the personnel, facility, and financial expenditures which would be required, Congress might well opt” to reverse the outcome reached. 12 VetApp. at 485-86. Similarly, the outcome reached here is so inconsistent with the unambiguous intent of the VCAA that it would not be unreasonable for the Court to suggest to Congress that it may want to revise the statute to reverse this decision. Accordingly, I respectfully dissent from the majority opinion.