Citation Nr: 1237369 
Decision Date: 10/31/12 Archive Date: 11/09/12

DOCKET NO. 07-25 359 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Atlanta, Georgia


THE ISSUE

Entitlement to a disability rating in excess of 10 percent for the residuals of a left wrist fracture with posttraumatic degenerative arthritis and painful motion.


WITNESS AT HEARING ON APPEAL

Veteran


ATTORNEY FOR THE BOARD

K. A. Kennerly, Counsel






INTRODUCTION

The Veteran served on active duty from February 1976 to May 1997.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from an August 2004 rating decision of the Atlanta, Georgia, Regional Office (RO) of the Department of Veterans Affairs (VA), which, inter alia, denied the benefit sought on appeal. In August 2005, the Veteran submitted a notice of disagreement with the denial of his claim of entitlement to an increased disability rating for his left wrist as well as with the RO's determination not to reopen his previously denied claim of entitlement to service connection for a bilateral knee disability. A May 2007 rating decision increased the Veteran's disability rating for his left wrist from noncompensable to 10 percent disabling, effective from February 12, 2004. Since this increase did not constitute a full grant of the benefit sought on appeal, this issue remains in appellate status. See AB v. Brown, 6 Vet. App. 35, 39 (1993). Thereafter, the Veteran perfected his appeal in August 2007.

In August 2010, the Veteran presented sworn testimony during a Board video conference hearing, which was chaired by the undersigned Veterans Law Judge. A transcript of that proceeding has been prepared and incorporated into the evidence of record.

In February 2011, the Veteran's claims, inter alia, of entitlement to an increased disability rating for his left wrist and his petition to reopen his previously denied claim of entitlement to service connection for a bilateral knee disability came before the Board. The Board reopened the Veteran's service connection claim and remanded both the increased rating claim and the service connection claim to the Appeals Management Center (AMC) for additional evidentiary development.

Subsequently, service connection was granted for the Veteran's bilateral knee disabilities by a May 2012 rating decision. In view of the foregoing, this issue has been resolved and is no longer before the Board. See generally Grantham v. Brown, 114 F.3d 116 (Fed. Cir. 1997); Barrera v. Gober, 122 F.3d 1030 (Fed. Cir. 1997).
Employability

The Board has considered the application of Rice v. Shinseki, 22 Vet. App. 447 (2009), which held that a claim of entitlement to a total disability evaluation based on individual unemployability due to service-connected disabilities (TDIU) is part of an increased rating claim when such a claim is raised by the record. In this case, the Veteran has not argued, and the record does not otherwise reflect, that his service-connected left wrist disability renders him totally unemployable. As such, a claim for TDIU is not before the Board.

Referred Issues

As noted in the Board's February 2011 decision, the issues of whether new and material evidence has been received sufficient to reopen the previously denied claims of entitlement to service connection for a bilateral hip disability and a back disability have been raised by the record [see Veteran's Statement, August 8, 2005], but have not yet been adjudicated by the Agency of Original Jurisdiction (AOJ). As such, the Board does not have jurisdiction over these claims and they are referred to the AOJ for appropriate action.


FINDINGS OF FACT

1. The residuals of a left wrist fracture are manifested by x-ray evidence of degenerative changes, reduced range of motion, and functional limitation not equivalent to ankylosis.

2. The evidence in this case does not show a marked interference with employment or frequent periods of hospitalization due to the service-connected left wrist disability that is the subject of this appeal, so as to render impractical the application of the regular schedular standards.



CONCLUSIONS OF LAW

1. The criteria for entitlement to a disability rating in excess of 10 percent for the residuals of a left wrist fracture have not been met. 38 U.S.C.A. § 1155 (West 2002); 38 C.F.R. §§ 3.102, 4.1, 4.7, 4.20, 4.40, 4.45, 4.59, 4.27, 4.71a, Diagnostic Codes 5010, 5214, 5215 (2011).

2. The criteria for referral of the service-connected residuals of a left wrist fracture on an extraschedular basis have not been met. 38 C.F.R. § 3.321(b)(1) (2011).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. VA's Duties to Notify and Assist

With respect to the Veteran's claim decided herein, VA has met all statutory and regulatory notice and duty to assist provisions. See 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126 (West 2002); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326 (2011).

Under the VCAA, when VA receives a complete or substantially complete application for benefits, it is required to notify the claimant and his representative, if any, of any information and medical or lay evidence that is necessary to substantiate the claim. See 38 U.S.C.A. § 5103(a) (West 2002); 38 C.F.R. § 3.159(b) (2011); Quartuccio v. Principi, 16 Vet. App. 183 (2002). In Pelegrini v. Principi, 18 Vet. App. 112, 120-21 (2004) (Pelegrini II), the United States Court of Appeals for Veterans Claims (Court) held that VA must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide.

Prior to and following the initial adjudication of the Veteran's claim, letters dated in May 2004 and May 2008 fully satisfied the duty to notify provisions. See 38 U.S.C.A. § 5103(a) (West 2002); 38 C.F.R. § 3.159(b)(1) (2011); Quartuccio, at 187. The Court held that to satisfy the first Quartuccio element for an increased-compensation claim, section 5103(a) compliant notice must meet a four part test laid out in Vazquez-Flores v. Peake, 22 Vet. App. 37 (2008). The U.S. Court of Appeals for the Federal Circuit (Federal Circuit) overruled Vazquez-Flores in part, striking claimant-tailored and "daily life" notice elements. See Vazquez-Flores v. Shinseki, 580 F.3d 1270 (Fed. Cir. 2009).

Thus modified, VA must notify the claimant that, 1) to substantiate a claim, the claimant must provide, or ask VA to obtain, medical or lay evidence demonstrating a worsening or increase in severity of the disability, 2) a disability rating will be determined by applying relevant Diagnostic Codes, which typically provide for a range in severity of a particular disability from noncompensable to as much as 100 percent (depending on the disability involved), based on the nature of the symptoms of the condition for which disability compensation is being sought, their severity and duration, and their impact upon employment, and 3) provide examples of the types of medical and lay evidence that the claimant may submit (or ask VA to obtain) that are relevant to establishing entitlement to increased compensation. See Vazquez-Flores, 22 Vet. App. at 43, overruled in part sub. nom. Vazquez-Flores v. Shinseki, 580 F.3d 1270 (Fed. Cir. 2009). 

This was accomplished by the May 2008 notice letter. Although this letter was not sent prior to initial adjudication of the Veteran's claim, this was not prejudicial to him, since he was subsequently provided adequate notice, he was provided ample time to respond with additional argument and evidence, the claim was readjudicated and additional supplemental statements of the case were provided to the Veteran in April 2009 and April 2012. See Prickett v. Nicholson, 20 Vet. App. 370 (2006). 

All the law requires is that the duty to notify is satisfied and that claimants are given the opportunity to submit information and evidence in support of their claims. Once this has been accomplished, all due process concerns have been satisfied. See Bernard v. Brown, 4 Vet. App. 384 (1993); Sutton v. Brown, 9 Vet. App. 553 (1996); see also 38 C.F.R. § 20.1102 (2011) (harmless error). In view of the foregoing, the Board finds that the Veteran was notified and aware of the evidence needed to substantiate his appellate claim, as well as the avenues through which he might obtain such evidence, and of the allocation of responsibilities between himself and VA in obtaining such evidence. Accordingly, there is no further duty to notify. 

The Board also concludes VA's duty to assist has been satisfied. The Veteran's service treatment records and VA medical records are in the file. At no time has the Veteran indicated that he is in receipt of Social Security Administration disability benefits due to his left wrist disability. Further, the Board has reviewed the Veteran's electronic Virtual VA file, to which no additional records have been associated. Finally, the Veteran has at no time referenced outstanding records that he wanted VA to obtain or that he felt were relevant to the claim.

The duty to assist includes, when appropriate, the duty to conduct a thorough and contemporaneous examination of the Veteran. See Green v. Derwinski, 1 Vet. App. 121 (1991). In addition, where the evidence of record does not reflect the current state of the Veteran's disability, a VA examination must be conducted. See Schafrath v. Derwinski, 1 Vet. App. 589 (1991); 38 C.F.R. § 3.327(a) (2011).

The RO provided the Veteran with appropriate VA examinations in July 2004, March 2008, and April 2011. There is no objective evidence indicating that there has been a material change in the severity of the Veteran's service-connected disability since he was last examined. See 38 C.F.R. § 3.327(a) (2011). The duty to assist does not require that a claim be remanded solely because of the passage of time since an otherwise adequate VA examination was conducted. See VAOPGCPREC 11-95. The aforementioned VA examination reports are thorough and supported by VA outpatient treatment records. The examinations in this case are adequate upon which to base a decision. See Barr v. Nicholson, 21 Vet. App. 303, 311 (2007) (affirming that a medical opinion is adequate if it provides sufficient detail so that the Board can perform a fully informed evaluation of the claim). 

Additionally, the Board finds there has been substantial compliance with its February 2011 remand directives. The Board notes that the Court has recently noted that "only substantial compliance with the terms of the Board's engagement letter would be required, not strict compliance." See D'Aries v. Peake, 22 Vet. App. 97, 105 (2008); see also Dyment v. West, 13 Vet. App. 141, 146-47 (1999) (holding that there was no Stegall (Stegall v. West, 11 Vet. App. 268) violation when the examiner made the ultimate determination required by the Board's remand.) The record indicates that the AMC scheduled the Veteran for a medical examination and the Veteran attended that examination. The AMC later issued a supplemental statement of the case in April 2012. Based on the foregoing, the Board finds that the AMC substantially complied with the mandates of its remand. See Stegall, supra, (finding that a remand by the Board confers on the Veteran the right to compliance with its remand orders). Therefore, in light of the foregoing, the Board will proceed to review and decide the claim based on the evidence that is of record consistent with 38 C.F.R. § 3.655 (2011).

As there is no indication that any failure on the part of VA to provide additional notice or assistance reasonably affects the outcome of this case, the Board finds that any such failure is harmless. See Newhouse v. Nicholson, 497 F.3d 1298 (Fed. Cir. 2007). Importantly, the Board notes that the Veteran is represented in this appeal. See Overton v. Nicholson, 20 Vet. App. 427, 438 (2006). The Veteran has submitted argument and evidence in support of the appeal. Based on the foregoing, the Board finds that the Veteran has had a meaningful opportunity to participate in the adjudication of his claim such that the essential fairness of the adjudication is not affected.

II. The Merits of the Claim

The Veteran contends that the residuals of his left wrist fracture are more disabling than currently contemplated by his assigned 10 percent disability rating. The Board disagrees.

Governing Law and Regulations

Disability evaluations are determined by evaluating the extent to which a veteran's service-connected disability adversely affects his ability to function under the ordinary conditions of daily life, including employment, by comparing his symptomatology with the criteria set forth in the Schedule for Rating Disabilities (rating schedule). 38 U.S.C.A. § 1155 (West 2002); 38 C.F.R. §§ 4.1, 4.2, 4.10 (2011). If two evaluations are potentially applicable, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that evaluation; otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7 (2011). 

Separate evaluations may be assigned for separate periods of time based on the facts found. In other words, the evaluations may be "staged." See Hart v. Mansfield, 21 Vet. App. 505 (2007) (staged ratings are appropriate when the factual findings show distinct periods where the service-connected disability exhibits symptoms that would warrant different ratings.); see also Fenderson v. West, 12 Vet. App. 119, 126 (2001). A disability may require re-evaluation in accordance with changes in a veteran's condition. It is thus essential, in determining the level of current impairment, that the disability be considered in the context of the entire recorded history. 38 C.F.R. § 4.1 (2011). The Board concludes that the Veteran's service-connected left wrist disability has not significantly changed and a uniform rating is warranted.

The basis of disability evaluation is the ability of the body as a whole, or of the psyche, or of a system or organ of the body to function under the ordinary conditions of daily life including employment. 38 C.F.R. § 4.10 (2011).

In determining the degree of limitation of motion, the provisions of 38 C.F.R. §§ 4.10, 4.40 and 4.45 are for consideration. See DeLuca v. Brown, 8 Vet. App. 202 (1995).

Disability of the musculoskeletal system is primarily the inability, due to damage or infection in parts of the system, to perform the normal working movements of the body with normal excursion, strength, speed, coordination and endurance. Functional loss may be due to the absence or deformity of structures or other pathology, or it may be due to pain, supported by adequate pathology and evidenced by the visible behavior in undertaking the motion. Weakness is as important as limitation of motion, and a part that becomes painful on use must be regarded as seriously disabled. 38 C.F.R. § 4.40 (2011).
With respect to joints, in particular, the factors of disability reside in reductions of normal excursion of movements in different planes. Inquiry will be directed to more or less than normal movement, weakened movement, excess fatigability, incoordination, pain on movement, swelling, deformity or atrophy of disuse. 38 C.F.R. § 4.45 (2011).

The intent of the Rating Schedule is to recognize actually painful, unstable or malaligned joints, due to healed injury, as entitled to at least the minimum compensable rating for the joint. 38 C .F.R. § 4.59 (2011).

The Veteran's residuals of a left wrist fracture are rated under Diagnostic Codes 5215-5010. Hyphenated diagnostic codes are used when a rating under one diagnostic code requires use of an additional diagnostic code to identify the basis for the evaluation assigned. 38 C.F.R. § 4.27 (2011). Arthritis due to trauma is to be rated as degenerative arthritis. 38 C.F.R. § 4.71a, Diagnostic Code 5010 (2011). Degenerative arthritis established by x-ray findings will be rated on the basis of limitation of motion under the appropriate diagnostic codes for the specific joint or joints involved. When however, the limitation of motion of the specific joint or joints involved is noncompensable under the appropriate diagnostic codes, a rating of 10 percent is for application for each such major joint or group of minor joints affected by limitation of motion, to be combined, not added under Diagnostic Code 5003. Limitation of motion must be objectively confirmed by findings such as swelling, muscle spasm, or satisfactory evidence of painful motion. In the absence of limitation of motion, a 20 percent evaluation will be assigned with X-ray evidence of involvement of 2 or more major joints or 2 or more minor joint groups, with occasional incapacitating exacerbation. A 10 percent evaluation will be assigned with X-ray evidence of involvement of 2 or more major joints or 2 or more minor joint groups. 38 C.F.R. § 4.71a, Diagnostic Code 5003 (2010).

Diagnostic Code 5215, in turn, governs limitation of motion of the wrist. Under this code, limitation of motion of the wrist warrants a 10 percent disability rating when dorsiflexion is less than 15 degrees or when palmar flexion is limited in line with the forearm. These ratings apply to both major and minor extremities. 38 C.F.R. § 4.71a (2011).
Under Diagnostic Code 5214, a 20 percent disability evaluation is warranted when there is favorable ankylosis in 20 to 30 degrees dorsiflexion in the minor wrist. A 30 percent disability evaluation is contemplated for ankylosis of the minor wrist in any other position, except favorable. A 40 percent rating is assigned for ankylosis of the minor wrist when ankylosis is unfavorable, in any degree of palmar flexion, or with ulnar or radial deviation. 38 U.S.C.A. § 4 .71a, Diagnostic Code 5214 (2011). 

Normal range of motion for the wrist is 70 degrees of dorsiflexion (extension); 80 degrees of palmar flexion; 45 degrees of ulnar deviation; and 20 degrees of radial deviation. See 38 C.F.R. § 4.71, Plate I.

Schedular Consideration

Initially, the Board notes that the Veteran's current 10 percent disability rating was assigned for the residuals of his left wrist fracture based on the February 2004 radiograph findings that indicated he had an old non-united navicular carpal fracture of the left wrist with associated posttraumatic degenerative osteoarthritic changes. See VA Treatment Record, February 12, 2004.

The Veteran was afforded a VA joints examination in July 2004. At that time, the Veteran complained of constant left wrist pain that did not cause incapacitation. He noted that he had no prosthetic implants of the joint and received no medical treatment. His functional impairment was noted as his inability to use his left hand without severe pain. Upon physical examination, the VA examiner noted that the general appearance of the Veteran's left wrist was within normal limits. Range of motion (ROM) findings were as follows:


Normal ROM
Left Wrist ROM
ROM: Pain
Dorsiflexion
70 degrees
70 degrees
70 degrees
Palmar Flexion
80 degrees
80 degrees
80 degrees
Radial Deviation
20 degrees
20 degrees
20 degrees
Ulnar Deviation
45 degrees
40 degrees
40 degrees

The VA examiner noted that the Veteran's left wrist ROM was additionally limited by pain and lack of endurance, though pain had the most functional impact. The Veteran's ROM was not additionally limited by fatigue, weakness, or incoordination. The Veteran was diagnosed with a left wrist fracture with traumatic arthritis. See VA Joints Examination Report, July 30, 2004.

The Board is aware of the VA treatment record dated in June 2004, indicating that the Veteran was previously diagnosed with carpal tunnel syndrome (CTS) of the left wrist. See VA Treatment Record, June 22, 2004. Notably, however, subsequent treatment in September 2004 noted that both Tinel's sign and Phalen's testing were negative, indicating that the Veteran did not suffer from CTS. See VA Treatment Record, September 29, 2004.

In December 2004, the Veteran participated in an electromyogram (EMG). The VA examiner noted the Veteran's history of daily twitching muscles - all extremities - lasting less than one minute. There were no associated events, no weakness, and no preference for upper or lower extremities. It was also noted that the Veteran had a history of left CTS with prior wrist fracture, with complaints of some residual numbness and paresthesias at night but no pain. The results of the EMG were (1) a non-specific finding of mildly increased amplitudes - otherwise a normal study and (2) a prior diagnosis of left hand CTS from a wrist fracture with electrodiagnostic evidence from nerve conduction studies in 1996. The Veteran was instructed to wear a splint on his left wrist. See VA Treatment Record, December 6, 2004.

In July 2006, the Veteran complained of intermittent tingling of the hands. Upon examination, he demonstrated full ROM of the left wrist. Neurological testing revealed motor strength to be 5/5 and sensation to be intact to monofilament. See VA Treatment Record, July 31, 2006.

The Veteran was afforded a second VA joints examination in March 2008. At that time, the Veteran complained of sharp pain in his left wrist (10/10) that was elicited by physical activity, though he indicated that he could function during this pain without medication. He did not endorse weakness, stiffness, swelling, heat, redness, giving way, lack of endurance, locking, fatigability or dislocation of the joint. The Veteran stated he was not on any medication for his left wrist and noted he had no prosthetic implants of the joint. Upon physical examination, the Veteran's left wrist was tender, but there was no evidence of edema, effusion, weakness, redness, heat, guarding of movement or subluxation. ROM findings were as follows:


Normal ROM
Left Wrist ROM
Dorsiflexion
70 degrees
70 degrees
Palmar Flexion
80 degrees
80 degrees
Radial Deviation
20 degrees
20 degrees
Ulnar Deviation
45 degrees
45 degrees

The VA examiner noted that the Veteran's left wrist ROM was not additionally limited by pain, fatigue, weakness, lack of endurance, or incoordination after repetitive use. The Veteran was again diagnosed with a left wrist fracture with traumatic arthritis. See VA Joints Examination Report, March 4, 2008.
The Veteran continued to complain of tingling and numbness over his left fingers at night, which was increasing in severity. See VA Treatment Records, September 3, 2008 and March 17, 2009.

The Veteran was afforded a third VA joints examination in April 2011. At that time, the VA examiner noted that there was no evidence of flare-ups of left wrist pain. The Veteran indicated that he was currently taking Naprosyn for his left wrist, but was not receiving any additional medical treatment. Upon physical examination, there were no signs of inflammation (no redness or swelling) but the Veteran did endorse tenderness on the dorsum of the left wrist. ROM findings were as follows:


Normal ROM
Left Wrist ROM
Dorsiflexion
70 degrees
25 degrees
Palmar Flexion
80 degrees
25 degrees
Radial Deviation
20 degrees
10 degrees
Ulnar Deviation
45 degrees
25 degrees

The VA examiner noted that three repetitions of ROM testing revealed no evidence of pain, fatigue, weakness, lack of endurance, instability or incoordination. There was no additional loss of joint function or motion with use due to the repeated testing, nor was there any evidence of neurological impairment related to the Veteran's left wrist. The Veteran was again diagnosed with a left wrist fracture with traumatic arthritis. See VA Joints Examination Report, April 28, 2011.

Having carefully considered the Veteran's contentions in light of the evidence of record and the applicable law, the Board finds that the Veteran's residuals of a left wrist fracture are adequately addressed by the 10 percent evaluation assigned. While the Board is aware of the Veteran's increased limitation of motion of the left wrist that was demonstrated during his April 2011 VA examination, the Veteran is in receipt of the maximum evaluation assignable for limitation of motion of the wrist. 38 C.F.R. § 4.71a, Diagnostic Code 5215 (2011). To warrant a higher rating, the evidence must demonstrate favorable ankylosis (frozen joint) in 20 to 30 degrees of dorsiflexion. 38 C.F.R. § 4.71a, Diagnostic Code 5214 (2011). The objective findings of record do not reflect ankylosis of the left wrist to warrant a rating in excess of 10 percent. As the Veteran is receiving the maximum evaluation assignable for limitation of motion of the wrist, consideration of painful motion could not warrant a higher rating. See Johnston v. Brown, 10 Vet. App. 80, 85 (1997) (implicitly holding that once a particular joint is evaluated at the maximum level in terms of limitation of motion, there can be no additional disability due to pain).

Extraschedular Consideration

Consideration has been given regarding whether the schedular evaluation assigned is inadequate, requiring that the RO refer the claim to the Chief Benefits Director or the Director, Compensation and Pension Service, for consideration of an extra-schedular evaluation where the service-connected disability presents an exceptional or unusual disability picture with marked interference with employment or frequent periods of hospitalization that render impractical the application of the regular schedular standards. 38 C.F.R. § 3.321(b)(1) (2011). An exceptional or unusual disability picture occurs where the diagnostic criteria do not reasonably describe or contemplate the severity and symptomatology of a veteran's service-connected disability. See Thun v. Peake, 22 Vet. App. 111, 115 (2008). 

If there is an exceptional or unusual disability picture, then the Board must consider whether the disability picture exhibits other factors such as marked interference with employment and frequent periods of hospitalization. Thun, 22 Vet. App. at 115-116. When those two elements are met, the appeal must be referred for consideration of the assignment of an extraschedular rating, otherwise, the schedular evaluation is adequate, and referral is not required. Id.

The schedular evaluation in this case is adequate. Ratings in excess of that assigned are provided for greater degrees of functional impairment of the left wrist, but those manifestations are not present in this case. Additionally, the diagnostic criteria adequately describe the severity and symptomatology of the Veteran's disability, particularly when the DeLuca factors are applied. Therefore, the Veteran's disability picture is contemplated by the rating schedule and no extraschedular referral is required.

Conclusion

Accordingly, the Board concludes that the preponderance of the evidence is against the claim of entitlement to a disability rating in excess of 10 percent for the residuals of a left wrist fracture with degenerative changes, and the benefit of the doubt rule enunciated in 38 U.S.C.A. § 5107(b) is not for application. In this case, for the reasons and bases discussed above, a reasonable doubt does not exist regarding the Veteran's claim. There is not an approximate balance of evidence.







 (CONTINUED ON NEXT PAGE)
ORDER

Entitlement to a disability rating in excess of 10 percent for the residuals of a left wrist fracture with posttraumatic degenerative arthritis and painful motion is denied.



____________________________________________
J. A. MARKEY
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs