Citation Nr: 1527822 
Decision Date: 06/29/15 Archive Date: 07/09/15

DOCKET NO. 06-07 561 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Columbia, South Carolina


THE ISSUE

Entitlement to an initial rating in excess of 20 percent for degenerative arthritis of the lumbosacral spine, prior to March 23, 2009, and a rating in excess of 40 percent for the disability from March 23, 2009.


REPRESENTATION

Appellant represented by: The American Legion


WITNESS AT HEARING ON APPEAL

Appellant


ATTORNEY FOR THE BOARD

G. Wasik, Counsel


INTRODUCTION

The Veteran served on active duty from July 1975 to July 1979, from August 1991 to November 1991, and from February 2003 to May 2004.

This case comes before the Board of Veterans' Appeals (Board) on appeal of an October 2005 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Columbia, South Carolina.

In September 2006, the Veteran provided testimony at a hearing before the undersigned Veterans Law Judge at the RO. A transcript of the hearing is of record.

The issue on appeal was last before the Board in October 2014 when it was remanded for further action by the Agency of Original Jurisdiction (AOJ). 

The record before the Board consists of electronic records within Virtual VA and the Veterans Benefits Management System.

The issues of entitlement to an increased rating for lumbosacral radiculopathy of both lower extremities and entitlement to service connection for hypertensive heart disease have been raised by the Veteran's representative in his August 2014 hearing presentation, but have not been adjudicated by the AOJ. Therefore, the Board does not have jurisdiction over them, and they are referred to the AOJ for appropriate action. 38 C.F.R. § 19.9(b) (2014). 


FINDINGS OF FACT

1. Prior to March 23, 2009, the Veteran's degenerative arthritis of the lumbosacral spine was manifested by limitation of motion; forward flexion was not limited to 30 degrees or less, ankylosis of the entire thoracolumbar spine was not present, and there were no incapacitating episodes of intervertebral disc syndrome.
 
2. From March 23, 2009, the Veteran's degenerative arthritis of the lumbosacral spine has been manifested by limitation of motion; unfavorable ankylosis of the entire thoracolumbar spine has not been present; and there have been no incapacitating episodes of intervertebral disc syndrome.


CONCLUSIONS OF LAW

1. Prior to March 23, 2009, the criteria for an initial rating in excess of 20 percent for degenerative arthritis of the lumbosacral spine have not been met. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. §§ 4.40, 4.45, 4.71a, Diagnostic Code 5242 (2014).
 
2. From March 23, 2009, the criteria for a rating in excess of 40 percent for degenerative arthritis of the lumbosacral spine have not been met. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. §§ 4.40, 4.45, 4.71a, Diagnostic Code 5242 (2014).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duties to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA), codified in pertinent part at 38 U.S.C.A. §§ 5103 , 5103A (West 2014), and the pertinent implementing regulation, codified at 38 C.F.R. § 3.159 (2014), provide that VA will assist a claimant in obtaining evidence necessary to substantiate a claim but is not required to provide assistance to a claimant if there is no reasonable possibility that such assistance would aid in substantiating the claim. They also require VA to notify the claimant and the claimant's representative, if any, of any information, and any medical or lay evidence, not previously provided to the Secretary that is necessary to substantiate the claim.

As part of the notice, VA is to specifically inform the claimant and the claimant's representative, if any, of which portion, if any, of the evidence is to be provided by the claimant and which part, if any, VA will attempt to obtain on behalf of the claimant. Although the regulation previously required VA to request that the claimant provide any evidence in the claimant's possession that pertains to the claim, the regulation has been amended to eliminate that requirement for claims pending before VA on or after May 30, 2008.

The Board also notes the United States Court of Appeals for Veterans Claims (Court) has held that the plain language of 38 U.S.C.A. § 5103(a), requires that notice to a claimant pursuant to the VCAA be provided 'at the time' that or 'immediately after' VA receives a complete or substantially complete application for VA-administered benefits. Pelegrini v. Principi, 18 Vet. App. 112, 119 (2004).

The timing requirement enunciated in Pelegrini applies equally to the initial-disability-rating and effective-date elements of a service-connection claim. Dingess v. Nicholson, 19 Vet. App. 473 (2006).

The record reflects that the Veteran was provided adequate notice by letters mailed in October 2005, March 2006, and September 2007. Although the Veteran was not provided complete notice with respect to his claim until after the initial adjudication of the claim, the Board finds that there is no prejudice to him in proceeding with the issuance of a final decision. See Bernard v. Brown, 4 Vet. App. 384, 394 (1993). In this regard, the Board notes that following the provision of the required notice and the completion of all indicated development of the record, the originating agency readjudicated the Veteran's claim. There is no indication in the record or reason to believe that the ultimate decision of the originating agency on the merits of the claim would have been different had complete VCAA notice been provided at an earlier time. See Overton v. Nicholson, 20 Vet. App. 427, 437 (2006) (A timing error may be cured by a new VCAA notification followed by a readjudication of the claim).

The Board also finds the Veteran has been afforded adequate assistance in regard to the claim. Service treatment records (STRs) and pertinent post-service medical records have been obtained, and the Veteran was afforded appropriate VA examinations in September 2005, October 2007, March 2009 and May 2014. Neither the Veteran nor his representative has identified any other evidence that could be obtained to substantiate the claim; the Board is also unaware of any such evidence.

As regards the September 2005 examination, in September 2006 the Veteran testified that he "opposed" the first VA examination because the examiner failed to consider that he was on bed rest for three or four days prior to the examination. He also alleged that the examiner failed to consider chiropractic treatment or medication prescribed to treat his low back disability in evaluating his back. As regards the October 2007 examination, in January 2008 statements, the Veteran stated that during his October 2007 examination, the only time the examiner touched him was when he tried to lift his leg and that range of motion testing was not performed.

The competency of a VA examiner is presumed, absent a showing of some evidence to the contrary. Hilkert v. West, 12 Vet. App. 145 (1999). As regards considerations of the Veteran's lay statements and clinical findings reported in both reports of examination, careful review of the September 2005 and October 2007 VA examination reports shows that both examinations were thorough and competent, and the Board finds those examination reports to be adequate for adjudication purposes.

Accordingly, the Board will address the merits of the claim.

General Legal Criteria

Disability evaluations are determined by the application of the VA's Schedule for Rating Disabilities (Rating Schedule), 38 C.F.R. Part 4. The percentage ratings contained in the Rating Schedule represent, as far as can be practicably determined, the average impairment in earning capacity resulting from diseases and injuries incurred or aggravated during military service and their residual conditions in civil occupations. 38 U.S.C.A. § 1155; 38 C.F.R. §§ 3.321(a), 4.1.

It is not expected, especially with the more fully described grades of disabilities, that all cases will show all the findings specified; findings sufficiently characteristic to identify the disease and the disability therefrom are sufficient; and above all, a coordination of rating with impairment of function will be expected in all cases. 38 C.F.R. § 4.21.

The evaluation of the same disability under various diagnoses is to be avoided. 38 C.F.R. § 4.14. 38 C.F.R. § 4.14 does not preclude the assignment of separate evaluations for separate and distinct symptomatology where none of the symptomatology justifying an evaluation under one diagnostic code is duplicative of or overlapping with the symptomatology justifying an evaluation under another diagnostic code. Esteban v. Brown, 6 Vet. App. 259, 262 (1994).

In determining the degree of limitation of motion, the provisions of 38 C.F.R. § 4.40 concerning lack of normal endurance, functional loss due to pain, and pain on use and during flare-ups; the provisions of 38 C.F.R. § 4.45 concerning weakened movement, excess fatigability, and incoordination; and the provisions of 38 C.F.R. § 4.10 concerning the effects of the disability on the veteran's ordinary activity are for consideration. See DeLuca v. Brown, 8 Vet. App. 202 (1995).

Under the rating criteria effective from September 26, 2003, lumbosacral spine disorders are to be evaluated under the general rating formula for rating diseases and injuries of the spine (outlined below). 38 C.F.R. § 4.71a, Diagnostic Codes 5235 through 5242. Intervertebral disc syndrome (IVDS) will be evaluated under the general formula for rating diseases and injuries of the spine or under the formula for rating intervertebral disc syndrome based on incapacitating episodes, whichever method results in the higher evaluation when all disabilities are combined under 38 C.F.R. § 4.25. 38 C.F.R. § 4.71a, Diagnostic Code 5243. 

An evaluation of 10 percent is warranted if forward flexion of the thoracolumbar spine is greater than 60 degrees but not greater than 85 degrees; the combined range of motion of the thoracolumbar spine is greater than 120 degrees but not greater than 235 degrees; there is muscle spasm, guarding, or localized tenderness not resulting in abnormal gait or abnormal spinal contour; or if there is a vertebral body fracture with loss of 50 percent or more of the height. A 20 percent evaluation is warranted if forward flexion of the thoracolumbar spine is greater than 30 degrees, but not greater than 60 degrees; the combined range of motion of the thoracolumbar spine is not greater than 120 degrees; or if there is muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. A 40 percent evaluation is warranted if forward flexion of the thoracolumbar spine is to 30 degrees or less or if there is favorable ankylosis of the entire thoracolumbar spine. Unfavorable ankylosis of the entire thoracolumbar spine warrants a 50 percent rating, and unfavorable ankylosis of the entire spine warrants a 100 percent rating.

There are several notes set out after the diagnostic criteria, which provide the following: First, associated objective neurologic abnormalities are to be rated separately under an appropriate diagnostic code. 

Second, for purposes of VA compensation, normal forward flexion of the thoracolumbar spine is 0 to 90 degrees, extension is 0 to 30 degrees, left and right lateroflexion is 0 to 30 degrees, and left and right lateral rotation is 0 to 30 degrees. The combined range of motion refers to the sum of the range of forward flexion, extension, left and right lateroflexion, and left and right rotation. The normal combined range of motion of the thoracolumbar spine is to 240 degrees. 

Third, in exceptional cases, an examiner may state that, because of age, body habitus, neurologic disease, or other factors not the result of disease or injury of the spine, the range of motion of the spine in a particular individual should be considered normal for that individual, even though it does not conform to the normal range of motion stated in the regulation. 

Fourth, each range of motion should be rounded to the nearest 5 degrees. 

Fifth, unfavorable ankylosis is a condition in which the entire cervical spine, the entire thoracolumbar spine or the entire spine is fixed in flexion or extension, and the ankylosis results in one or more of the following: difficulty walking because of a limited line of vision; restricted opening of the mouth and chewing; breathing limited to diaphragmatic respiration; gastrointestinal symptoms due to pressure of the costal margin on the abdomen; dyspnea or dysphagia; atlantoaxial or cervical subluxation or dislocation; or neurologic symptoms due to nerve root stretching. Fixation of a spinal segment in neutral position (zero degrees) always represents favorable ankylosis. 

Sixth, disabilities of the thoracolumbar and cervical spine segments shall be separately evaluated, except when there is unfavorable ankylosis of both segments, which will be rated as a single disability. 

The Formula for Rating Intervertebral Disc Syndrome (IDS) Based on Incapacitating Episodes provides for a rating of 10 percent for incapacitating episodes having a total duration of at least one week but less than 2 weeks during the past 12 months. A 20 percent rating is warranted for incapacitating episodes having a total duration of at least 2 weeks but less than 4 weeks during the past 12 months, a 40 percent rating requires incapacitating episodes having a total duration of at least 4 weeks but less than 6 weeks during the past 12 months, and a 60 percent rating requires incapacitating episodes having a total duration of at least 6 weeks during the past 12 months. An incapacitating episode is defined as a period of acute signs and symptoms due to IDS that requires bed rest prescribed by a physician and treatment by a physician. See 38 C.F.R. § 4.71a, Note (1). 

In both initial rating claims and normal increased rating claims, the Board must discuss whether "staged ratings" are warranted, and if not, why not. Fenderson v. West, 12 Vet. App. 119 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2007).

Except as otherwise provided by law, a claimant has the responsibility to present and support a claim for benefits under laws administered by the Secretary. The Secretary shall consider all information and lay and medical evidence of record in a case before the Secretary with respect to benefits under laws administered by the Secretary. When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107 (West 2002); 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990). To deny a claim on its merits, the evidence must preponderate against the claim. Alemany v. Brown, 9 Vet. App. 518, 519 (1996), citing Gilbert, 1 Vet. App. at 54 .

Analysis

In accordance with 38 C.F.R. §§ 4.1, 4.2, 4.41, 4.42 and Schafrath v. Derwinski, 1 Vet. App. 589 (1991), the Board has reviewed all evidence of record pertaining to the history of the service-connected disability. The Board has found nothing in the historical record which would lead to the conclusion that the current evidence of record is not adequate for rating purposes. Moreover, the Board is of the opinion that this case presents no evidentiary considerations which would warrant an exposition of remote clinical histories and findings pertaining to the disability, except as noted below.

The Veteran was originally awarded service connection for degenerative changes of the lumbar spine, L4-5 and L5-S1 and assigned an initial 20 percent rating, effective May 30, 2004, in the October 2005 rating decision on appeal. A January 2010 rating decision assigned a 40 percent rating, effective March 23, 2009.

At the outset, the Board notes that an October 2005 rating decision granted service connection for right S1 lumbosacral radiculopathy and assigned 10 percent disability rating, effective May 30, 2004. A December 2007 rating decision granted service connection for left L5-S1 lumbosacral radiculopathy and assigned a 10 percent rating, effective September 24, 2007. The separate ratings for radiculopathy of the Veteran's lower extremities are not currently on appeal, and as such, the Board has limited its consideration accordingly.

Prior to March 23, 2009

In order to warrant a rating in excess of 20 percent on a basis other than incapacitating episodes, the service-connected back disability must be productive of limitation in forward flexion of the thoracolumbar spine to 30 degrees or less or result in favorable or unfavorable ankylosis of the entire thoracolumbar spine. The preponderance of the evidence demonstrates that the back disability was not productive of such limitation prior to March 23, 2009. 

The Veteran received frequent treatment from a chiropractor from 2004 to 2006. The records reflect he complained of back and neck pain. The records include references to findings of weakness, tenderness, and discomfort in the paracervical and paralumbar muscles with increased ranges of motion and also with decreases in the ranges of motion. Occasional muscle spasm was also observed. Significantly, none of the records quantified the extent of the limitation of motion. They merely reference increases or decreases in the range of motion. 

The records also include references to the presence of "fixation" of the spine. In October 2004, the Veteran had a primary complaint of pain and weakness of the upper back, mid back and lower back. Pain was described as being an 8 out of 10. Objectively, the chiropractor found that the Veteran, "suffers from fixation of the lumbar spine." He opined the condition was slowly improving. A March 2005 record indicates the Veteran complained of pain, weakness and soreness in the upper back, neck and lower back. The Veteran described the problem as being moderate and occasional. The chiropractor examined the Veteran and found that he had fixation of the cervical spine and lumbar spine. In May 2005, the Veteran complained of pain, weakness and soreness in the neck, upper back, and lower back. The problem was described as moderate and frequent. He ambulated with an abnormal gait. Examination was conducted and the chiropractor determined the Veteran had fixation of the cervical spine, the lumbar spine and the lumbosacral area of the spine. The same symptomology and findings of fixation were made in March 2006. 

Although the private chiropractic treatment records dated in 2005 and 2006 reference "fixation" of the lumbar and lumbosacral spine, the chiropractor did not state that the Veteran had fixation of the entire thoracolumbar spine. Moreover, contemporaneous medical records from 2005 and 2006 are devoid of evidence demonstrating that the Veteran experienced ankylosis of the lumbar spine or the equivalent of ankylosis. The records document complaints of pain but they do not indicate, in any way, that the Veteran had an inability to move his spine. Significantly, at the time of the September 2005 VA examination, it was determined that the Veteran was able to move his lumbar spine in all pertinent directions. Although the range of motion was limited, the examination report documents that the Veteran still had some pain free motion in his spine in all pertinent directions (flexion, extension, rotation and lateral flexion). This was true even after repetitive motion testing was conducted. Furthermore, the Veteran was employed during 2005 and 2006 as a driver and deliveryman. His duties entailed lifting and delivering packages. While the Veteran reported he had missed work due to back pain, he has not indicated that he missed any work due to an inability to move his lumbar spine. The Board finds it reasonable to assume that if the Veteran had "fixation" of the spine which was the equivalent of ankylosis, the Veteran would not have been able to perform his duties which required physical effort and movements of his back. Again, the evidence of record indicates the Veteran complained of pain but he has not indicated that he had a complete inability to move his spine, even when pain is taken into account. Other than the annotations in the private chiropractor's records, there is no evidence that the service-connected back disability is productive of ankylosis or the equivalent of ankylosis. The Board places greater probative value on the report of the September 2005 VA examination which affirmatively found that the Veteran had some pain free motion in his spine over the chiropractor's finding that the spine was fixed without any quantification of the fixation. An increased rating is not warranted based on the presence of ankylosis. 

During the pertinent time period, the Veteran also received intermittent treatment from private and VA health care professionals for his back complaints. Significantly, none of these records includes any evidence that range of motion testing was conducted which documented limitation of motion sufficient to warrant an increased rating. The records document complaints of back pain but none of the complaints reference significant limitation of motion in the spine. Again, the records do not include range of motion testing which quantifies the extent of limitation of motion. The clinical records include references to the fact that back pain interfered with his employment but did not limit his employment. Moreover, the records are totally silent as to any clinician ordering the Veteran bedrest to treat his back. 

The Veteran underwent several VA examinations during the pertinent time period. The evidence included in the examination reports does not document sufficient limitation of motion of the lumbar spine to warrant a rating in excess of 20 percent prior to March 23, 2009. The records also do not document sufficient intervertebral disc disease symptomology to warrant an increased rating. 

On VA general medical examination in September 2005, the Veteran complained of low back pain with flare-ups once or twice a week that affected his ability to walk. The Veteran reported there was really minimal low back pain and the problem really more involved the right posterior thigh and calf. He experienced occasional pain on the left. He wore an over-the-counter back support which seemed to help. He had not had any surgery, injections, or physical therapy, but took pain medication and muscle relaxants. Prolonged sitting caused stiffness in his back, while lifting and bending caused low back pain. He limited his lifting to 50 pounds due to low back pain. In February 2005, he was out of work for three weeks due to low back pain. However, he had not been prescribed bed rest by a physician. At that time, he was employed as a truck driver and lifted parcels weighing 50 to 60 pounds. Once or twice a week, he would have a bad day in which he could still go to work and carry out his activities but he did not feel as mobile. He had taken off quite a few personal days because of low back pain. 

On range of motion testing of the thoracolumbar spine, forward flexion was to 65 degrees with end range of pain. After repetitive use, forward flexion was reduced to 50 degrees. There were 25 degrees extension without pain, 25 degrees right lateral flexion with end range of pain, 30 degrees left lateral flexion without pain, 45 degrees rotation on the right and 30 degrees rotation on the left without pain. On examination of the low back, there was no muscle tenderness. Straight leg raising was negative bilaterally. Motor strength and tone were normal throughout. Deep tendon reflexes were 2+ throughout except for an absent right ankle jerk. Light touch sensation was normal in the lower extremities with normal gait. A September 2005 X-ray examination of the lumbar spine indicated degenerative joint disease at the L4-5 and the L5-S1 levels. There was very minimal scoliosis with convexity to the right. No other abnormalities of the lumbar spine were seen.

On VA spine examination in October 2007, the Veteran presented with complaints of constant low back pain rated six out of ten on the pain scale. Low back pain was aggravated by changes in the weather, prolonged sitting and standing, lifting, and bending. The Veteran denied any incapacitating episodes over the last 12 months in which a physician prescribed bed rest. He also denied any flare-ups and stated that his symptoms were persistent and consistent. He had never undergone surgery on his low back or received injections in his lumbar spine. He had physical therapy and currently took pain medication. He had continued employment as a truck driver, but had difficulty getting into and out of his truck and could not perform heavy lifting. He also had to take frequent breaks and missed work due to pain. He denied any effect on his activities of daily living and denied flare-ups. With the exception of a back brace, he did not use assistive devices to aid ambulation.

On examination of the thoracolumbar spine, there were 60 degrees forward flexion, 10 degrees extension, 10 degrees lateral flexion, and 10 degrees rotation with pain throughout all ranges of motion. Repetitive motion of the lumbar spine was possible without changes in range of motion or pain level and range of motion was not additionally limited following repetitive use. There was no spasm on examination, but there was diffuse lumbar spine tenderness. Straight leg raising was positive on the left; strength was 5/5 in all extremities with 2+ deep tendon reflexes. Gait was abnormal and slow. An X-ray examination of the lumbar spine showed DDD at L4 through S1 with minimal scoliosis. An MRI of the lumbar spine showed DDD at L3 through S1 with neuroforaminal stenosis at L4-5 as well as at L5-S1. The Veteran was diagnosed with DDD of the lumbar spine and minimal scoliosis of the lumbar spine.

The examiner opined that the Veteran put forth appropriate effort when he evaluated his range of motion and that he did not appear to be in significant pain on examination. However, his willingness to cooperate with the testing was minimal. There were obvious abnormalities seen on an MRI but the significance of those abnormalities did not explain the Veteran's inability to lateral flex and rotate to 10 degrees. The Veteran also complained of significant worsening of his low back pain when the examiner applied axial compression to his head. The examiner noted that it is well documented within medical literature that this sort of compression should not exacerbate low back pain. The examiner did not appreciate any muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour. The examiner felt that there should not be any additional limits on functional ability during flare-ups as the Veteran denied flare-ups stating that his symptoms were persistent and unrelenting. The examiner acknowledged that the Veteran should not be performing any heavy lifting due to his low back disability, but opined that he should be able to perform the majority of his duties as a truck driver.

At the time of an October 2007 VA neurological examination, the Veteran reported he had intense low back pain which radiated to the left leg. The pain was constant and he had exacerbations of pain when he coughs or sneezes. Physical examination was conducted and a MRI was reviewed. The impression from the examination was intense low back pain secondary to L5 and S1 radiculopathies on the left side. 

Also associated with the record are various statements from the Veteran as well as the transcript of his hearing before the undersigned. 

In September 2006, the Veteran testified that he experienced extreme low back pain which became excruciating with any kind of physical activities. He complained that the September 2005 VA examiner failed to mention that he was taking medication for his low back disability and stated that, contrary to the report, he was on bed rest for about three or four days prior to the examination. He testified that the examiner failed to consider his weekly chiropractic treatments. As regards employment, he testified that he was required to lift 70 pounds but could not lift more than 50 pounds so he was accommodated with another position that did not require lifting. He testified that he missed over 20 days of work due to his low back disability. 

In statements dated in January 2008, the Veteran stated that he was unable to bend over or lift his leg during the October 2007 examination due to pain. He alleged that the examiner failed to perform range of motion testing and that he was prescribed bed rest by a neurologist after his examination. He stated that he did have flare-ups but took a day off from work in lieu of seeking medical treatment.

In a February 2009 statement, the Veteran stated that upon returning to work in June 2004, his low back disability worsened and he was prescribed medications, wore back braces, and received chiropractic care. He stated that he changed jobs due to his low back disability and experienced persistent pain and flare-ups during which he used sick and vacation time at work.

In a January 2010 statement, the Veteran stated that he did not believe that the examiner could accurately identify March 23, 2009, as a specific date in which his condition worsened. He reported experiencing persistent flare-ups while performing activities of daily living and work activities. He also stated that he was out of work 50 days within a 7-month period in 2005.

The Board finds the Veteran's statements and testimony to be insufficient to warrant an increased rating at any time during the appeal period. The Veteran reports on back pain and limitation of motion but does not indicate the extent of the limitation of motion. In the January 2008 statement, he alleged that he was unable to bend over at the time of the October 2007 VA examination. The examiner who conducted the examination, however, performed range of motion testing and determined that the Veteran was able to move his spine. The Board places greater probative weight on the objective findings of the health care professional who examined the Veteran over the Veteran's self-reported symptomology which was advanced while there was the possibility of pecuniary gain. See Cartright v. Derwinski, 2 Vet. App. 24, 25 (1991) [interest may affect the credibility of testimony]; cf. Pond v. West, 12 Vet. App. 341, 346 (1999). The contemporaneous evidence of record supports this determination as set out in the paragraph above which discusses why it was determined that the Veteran did not have fixation of the spine. 

The Veteran has alleged that he missed days from work due to his back disability. However, despite the Veteran's contentions, there is no objective evidence of incapacitating episodes of at least 4 weeks in any 12-month period prior to March 23, 2009, to warrant alternative rating on that basis. The Veteran took time off from work but there is no indication that this time off from work was prescribed by a physician. At the time of the VA examinations conducted in September 2005 and October 2007, he denied being prescribed bedrest by a physician. 

The Board finds there is no evidence of a separately compensable neurological disorder attributable to the service-connected low back disability other than the already separately rated lumbar radiculopathy of the lower extremities which is not at issue in this appeal. 

The Board has considered additional functional limitation due to factors such as pain and weakness. See 38 C.F.R. §§ 4.40 and 4.45 and DeLuca, supra. However, for the period prior to March 23, 2009, there is no basis for the assignment of additional disability due to pain, weakness, fatigability, weakness, or incoordination. In this regard, on the September 2005 VA examination, on repetitive maneuver flexion was reduced to 50 degrees. On the October 2007 VA examination, on repetitive use there was no change in range of motion or pain level and range of motion was not additionally limited following repetitive use. However, the examiner stated that the Veteran's inability to lateral flex and rotate to 10 degrees could not be explained and was unsupported by objective evidence found on MRI examination. While the Veteran did not appear to be exaggerating his symptoms on VA examination in September 2005, his subjective reports of pain and findings on range of motion testing on the October 2007 VA examination are unreliable. However, even affording the Veteran full credibility in reporting such symptoms, the Veteran's disability picture does not meet the criteria for a higher rating of 40 percent under the general rating formula for diseases and injuries of the spine or the formula for rating IVDS. 

Accordingly, the Veteran's symptoms and impairment do not meet the rating criteria for the higher, 40 percent rating, under the general rating criteria for disabilities of the spine or formula for rating IVDS prior to March 23, 2009.



From March 23, 2009

The Board finds that a rating in excess of 40 percent is not warranted for the service connected back disability for any portion of the period beginning March 23, 2009. The preponderance of the evidence of record demonstrates that the Veteran did not have unfavorable ankylosis from March 2009 to the present and it also demonstrates that he did not have any incapacitating episodes of intervertebral disc disease during this time period. In this regard, on the March 2009 VA examination range of motion testing revealed 25 degrees of forward flexion. At the time of the May 2014 VA spine examination, the Veteran was able to forward flex, extend, laterally flex and rotate his spine at least 10 degrees in each direction with pain only at the end point of motion. The range of motion did not change after repetitive use. The examiner opined that this range of motion would decrease upon repetitive use but the examiner did not indicate that there would be no motion in the spine after repetitive use. This pain-free range of motion weighs against a determination that the Veteran experiences any ankylosis of the lumbar spine. Furthermore, the private and VA clinical records dated during the pertinent time period are devoid of any findings of ankylosis. The records reference decreases in the range of motion but do not indicate, in any way, that the Veteran was unable to move his spine subsequent on or after March 23, 2009. The decreases in the range of motion were not quantified but there was no finding that the Veteran did not have any motion in his back. 

Despite the Veteran's contentions, there is no objective evidence of incapacitating episodes of at least 6 weeks in any 12-month period from March 23, 2009, to the present, to warrant an alternative rating on that basis. The clinical records are devoid of any evidence that a health care professional has prescribed bed rest to treat the back disability. The Board finds it reasonable to assume that if the Veteran had been prescribed bed rest, this would have been reflected in the clinical records. At the time of the most recent VA examination in May 2014, the examiner found that the Veteran had not had any incapacitating episodes in the preceding twelve months due to intervertebral disc disease. 

Accordingly, the Veteran's disability picture does not meet the criteria for a higher rating of 50 or 100 percent under the general rating formula for diseases and injuries of the spine or a higher rating of 60 percent under the formula for rating IVDS. In addition, there is no evidence during the pertinent time period of a separately compensable neurological disorder attributable to the service-connected low back disability other than the separately rated lumbar radiculopathy that is not at issue in this appeal.

The Board has considered additional functional limitation due to factors such as pain and weakness. See 38 C.F.R. §§ 4.40 and 4.45 and DeLuca, supra. The reports of the March 2009 VA examination and the May 2014 VA examination revealed that range of motion was not additionally limited following repetitive use. While the Veteran experienced a severe degree of pain getting onto and off of the examination table and all movement appeared painful in March 2009, given that the General Rating Formula specifically applies with or without symptoms such as pain, the Board finds that additional compensation for pain is not warranted. While the Veteran also experienced pain during range of motion testing, range of motion was not additionally limited following repetitive use. Even affording the Veteran full credibility in reporting such symptoms, the Veteran's disability picture does not meet the criteria for a rating in excess of 40 percent. The Board concludes that a higher rating based on DeLuca factors is not warranted.

Other Considerations

Consideration has been given to assigning additional staged ratings; however, at no time during the periods in question has the disability warranted more than the assigned ratings.

The Board has also considered whether this claim should be referred to the Director of the Compensation Service for extra-schedular consideration. In determining whether a case should be referred for extra-schedular consideration, the Board must compare the level of severity and the symptomatology of the claimant's disability with the established criteria provided in the rating schedule for disability. If the criteria reasonably describe the claimant's disability level and symptomatology, then the disability picture is contemplated by the rating schedule, the assigned evaluation is therefore adequate, and no referral for extra-schedular consideration is required. Thun v. Peake, 22 Vet. App. 111, 115 (2008).

In this case the manifestations of the service-connected disability (back pain and limitation of motion) are contemplated by the schedular criteria. The Board has therefore determined that referral of this case for extra-schedular consideration under 38 C.F.R. § 3.321(b) is not in order.

Finally, the Board notes that the issue of entitlement to a total rating based on unemployability due to the back disability has not been raised in this case. In this regard, the Board notes that Veteran has not contended that he is unemployable due to his back disability. In addition, while the evidence shows that the Veteran has missed days of work due to his back disability, it also shows that he has maintained employment throughout the period on appeal.


ORDER

The appeal is denied. 



____________________________________________
Shane A. Durkin
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs